*777 Opinion
BLEASE, Acting P. J.
Petitioner, Byron Craig Mason, seeks review of the denial of a Penal Code section 995[1] motion to set aside a grand jury indictment for the arson of forestland that caused great bodily injury. (§451; see id.., subd. (a).) The indictment arises out of a forest and grass fire ignited by sparks emitted from the explosion of a large firework. The firework, an illegal aerial device designed to shoot flares into the air, was thrown by petitioner into a large swimming hole, surrounded by cliffs, forest, and grassland, on a hot July day in 2012. It floated briefly, then exploded, shooting sparks into the air, one of which landed in dry brush 27 feet above the hole, causing a fire that burned 2,650 acres of grassland and forest. Mason was initially charged by complaint with arson with enhanced penalties (§451, subds. (a), (b)) and the lesser offense of unlawfully causing a fire (§ 452). The arson charges were dismissed at a preliminary hearing and Mason was held to answer on the lesser offense.
The People did not file an information in the superior court. They convened a grand jury and obtained an indictment charging Mason with arson that caused great bodily injury and the burning of an inhabited structure, relying on People v. Atkins (2001) 25 Cal.4th 76 [104 Cal.Rptr.2d 738, 18 P.3d 660] (Atkins) and In re V.V. (2011) 51 Cal.4th 1020 [125 Cal.Rptr.3d 421, 252 P.3d 979]. The grand jury was instructed with a modified version of the standard CALCRIM instructions for an arson that causes great bodily injury and for an arson that causes an inhabited structure to bum. (§ 451, subds. (a), (b); CALCRIM Nos. 1501, 1515, 240.)[2]
The instruction follows the language of CALCRIM No. 1501. The modification, which is not contained in the standard instmction, was apparently *778 derived from Atkins and In re V.V. It provides that; “It is not required that [Mason] intended to break the law or intended to cause fire to forest land” and that “[a]n act cause[s] burning of forest land ... if the burning was the direct, natural, and probable consequence of the act . . . ,”[3] It is this modification which Mason challenges.
The grand jury returned an indictment charging defendant with arson of an inhabited structure and arson that causes great bodily injury. The trial court denied Mason’s motion to set aside the indictment (§ 995), and Mason sought review of the denial in this court. We granted review.
On review Mason challenges the modification to the standard instruction, and the grand jury evidence and procedures, claiming in part that the jury should have been instructed on the lesser offense of unlawful burning, and that an indictment does not lie where a complaint is not dismissed and the defendant is held to answer on another charge. He argues that arson requires an intent to bum a property, and that when he set off the firework he was on an outing with his wife and children to a swimming hole, into which the firework was thrown, and did not intend to cause a forest and grassland fire. He claims that his conduct amounted at most to the lesser offense of unlawfully causing a fire. (§ 452.)
The case turns on the culpable state for arson. The Supreme Court in Atkins and In re V.V. rejected intent to cause a structure to be burned as the meaning of willfully “causing] to be burned” a structure, the language of the third proscribed act of section 451. It construed “causing] to be burned” as “ ‘the act that causes’ ” a stmcture to bum (Atkins, supra, 25 Cal.4th at p. 86; In re V.V., supra, 51 Cal.4th at p. 1027), and held that the mens rea for that form of arson is the “general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant stmcture or property.” (Atkins, supra, 25 Cal.4th at p. 89; see In re V.V., supra, 51 Cal.4th at p. 1029.)
Because we follow the Supreme Court’s interpretation of “causes to be burned,” we shall affirm the indictment on the ground the grand jury proceedings show there was probable cause to believe that the natural and highly probable consequence of the act of igniting and throwing a large, *779 unlawful aerial firework into the swimming hole in the middle of a forest and grassland in extreme fire conditions would be the burning of the forestland.[4]
FACTS
On July 11, 2012, Mason went with his wife, his two children, his dog, and friends to the Shirttail Canyon swimming hole in Foresthill, California, for a party. The size of the swimming hole is approximately 50 feet by 72 feet and it was surrounded by steep, granite, canyon walls and grassland and forest. Other people were present. It was a hot and dry day and people were swimming. It was fire season, and numerous fires had started in the surrounding area.
About 2:00 p.m. a member of Mason’s party asked the swimmers to get out of the swimming hole. Mason then lit and threw an aerial firework into the middle of the swimming hole where it initially floated, then exploded, throwing flares in all directions and up in the air. A spark landed on a dry, grassy edge of the cliff about 27 feet above the surface of the pool and ignited the brush. The fire spread quickly and soon expanded beyond control. Mason unsuccessfully attempted to put out the fire, then left the area with his family and dog, saying “I’m sorry, I’m sorry.” By the time a fire suppression crew arrived the fire had burned some 500 acres. A firefighter suffered a fracture of his right forearm when a large boulder hit his arm. In all, 2,650 acres of grassland and forest were destroyed.
A search of Mason’s car revealed a box of various fireworks including aerial shells. The aerial shell was identified by Bryant Hart, an explosive enforcement officer with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, as the kind used in the incident and as illegal for use in California. An aerial shell is made of explosive material that shoots flares into the air that spray off stars that bum when falling through the air. The officer testified that a person who purchased the fireworks would know the nature of the fireworks purchased. He also testified that aerial shells had caused fires before. Mason admitted that he had purchased and used the fireworks before.
Mason tearfully confessed to law enforcement and expressed great remorse for the consequences of his act.
*780 DISCUSSION
I
Mason Was Properly Indicted on the Arson Charge Pursuant to In re V.V.
A. The Prosecution May Proceed by an Indictment Charging Arson Notwithstanding That Mason Was Held to Answer for Unlawful Burning
Mason argues that the prosecutor cannot proceed by indictment on the arson charges because he was held to answer on the unlawful burning charge, and the magistrate dismissed the arson counts but never dismissed the entire action. He argues that because he had been held to answer on the complaint, albeit not on the arson charges, the prosecution could not thereafter file an indictment. He argues that in such case the prosecution may either include the dismissed charges in an information pursuant to section 739, or make a motion in superior court to compel the magistrate to reinstate the dismissed charges pursuant to section 871.5, but these remedies are exclusive, and the prosecution may not proceed by way of indictment as it did in this case.[5] We disagree.
It has long been held that the prosecution may elect to start a prosecution over either by a new complaint or by indictment following a magistrate’s order of dismissal. (People v. Uhlemann (1973) 9 Cal.3d 662, 664 [108 Cal.Rptr. 657, 511 P.2d 609].) In this case the arson charges were dismissed when the magistrate failed to hold Mason to answer. Section 871 provides that a magistrate shall order a complaint dismissed when it appears that no public offense has been committed. A failure to hold the defendant to answer is the equivalent of a section 871 dismissal of the arson charges in the complaint, even if there is no express order. (People v. Superior Court (Martinez) (1993) 19 Cal.App.4th 738, 744 [23 Cal.Rptr.2d 733] (Martinez).) Thus, the magistrate’s failure to hold Mason on the arson charges was the equivalent of a dismissal of those charges, and the prosecution could elect to proceed by way of indictment on those charges following the dismissal.
*781 Mason argues that a dismissal under section 871 did not occur in this case, relying on Martinez, supra, 19 Cal.App.4th 738. Martinez does not support Mason’s point. Martinez concerned whether a magistrate’s order of dismissal under section 871 should be considered an order terminating the action within the meaning of section 1387, which provides a bar to the prosecution of an offense that has already been terminated twice. (Martinez, at pp. 743-744.) Martinez recognized that a section 871 order of dismissal may or may not be an order terminating the action within the meaning of section 1387, depending on the circumstances. (Martinez, at p. 744.) Martinez held that a magistrate’s dismissal pursuant to section 871 does not terminate the action for purposes of section 1387 when a defendant is held to answer on another transactionally related count and the People elect to proceed in the same case pursuant to section 739 by filing an information charging the defendant with both counts. (Martinez, at p. 745.) In such a case the People take the risk that the superior court would find the magistrate wrong in evaluating the charge, and the action is not terminated unless the superior court agrees with the magistrate’s ruling. (Ibid.)
Here, the People did not proceed in the same action pursuant to section 739, but started the prosecution over by taking the case to the grand jury. The concern is not whether the magistrate’s dismissal of the charged arson offenses was a termination of the action within the meaning of section 1387, but whether the magistrate’s failure to hold Mason on the arson charges constituted a dismissal of those charges pursuant to section 871. In that circumstance the failure to hold Mason was equivalent to a dismissal, and the People are free to start the prosecution over, either by complaint or by indictment. (People v. Uhlemann, supra, 9 Cal.3d at p. 664.)
The magistrate held Mason to answer on the lesser charge of unlawfully causing a fire (§ 452) following the preliminary hearing. Mason waived time for filing the information to April 2, 2013, the date of the arraignment on the information. On April 2, the prosecutor expressed her belief that there was no case pending, and defense counsel told the court he understood that the People were not going to file an information at that time. The court indicated there were no more court dates and Mason would be removed from supervised own recognizance release. Thus, after April 2, Mason was entitled to dismissal of the action for failure to file an information within the statutory time.
Mason argues there was no dismissal of the case because there was no formal order of dismissal, citing People v. Ganger (1950) 97 Cal.App.2d 11 [217 P.2d 41]. However, Ganger simply stands for the unremarkable proposition that a prisoner who believes his imprisonment illegal may not simply escape, but must apply for release. In this case, where the time for filing an *782 information had run, the prosecution represented that it was not planning to file an information, and Mason was not in custody or released on his own recognizance, the case was effectively dismissed, and the prosecution was free to start the prosecution over.
Moreover, the prosecution may proceed by way of indictment “even prior to dismissal of the complaint.” (People v. Carrington (2009) 47 Cal.4th 145, 181 [97 Cal.Rptr.3d 117, 211 P.3d 617].) In Carrington the defendant contended that the grand jury lacked jurisdiction to indict her because, at the time of the indictment, proceedings on a previous complaint had been stayed. The court disagreed, saying that “[a]fter a complaint has been filed, the prosecution is not prohibited from seeking an indictment on the same charges, even prior to dismissal of the complaint.” (Ibid.) Thus, assuming the charge on the necessarily included offense of unlawful burning was not dismissed, the prosecution could proceed by indictment prior to a formal dismissal of that charge.
Accordingly, the People were not prohibited from proceeding by indictment.
B. The Grand Jury Was Informed of the Dismissal of the Complaint Charging Arson
Mason claims the prosecutor failed to inform the grand jury that he was not held to answer at the preliminary hearing on the charges of arson, that the charges were dismissed, and that he was held to answer only on the lesser offense of unlawful burning (§ 452). However, the grand jury was provided a transcript of the preliminary hearing and hence could have determined that the magistrate had dismissed the charge of arson and held Mason to answer only for the offense of unlawfully causing a fire. That is sufficient.
C. The Prosecution Was Not Required to Instruct the Jury Sua Sponte on the Offense of Unlawfully Causing a Fire
Mason argues that it was instructional error to fail to advise the grand jury on the lesser included offense of unlawful burning, given the fact that three grand jurors inquired about the mens rea required for arson. One asked whether “stupidity and even extreme stupidity [can] negate malice.” A second asked the source of the modified provision of the standard instruction that “willingly or on purpose . . . does not require that the intent was to cause a fire.” A third stated that “I didn’t see that [Mason] willfully and maliciously started a fire.”
*783 The People have no sua sponte duty to instruct the grand jury on a lesser included offense.[6] “[Ujnless the grand jury specifically requests an instruction on lesser included offenses, the prosecutor is not required to so instruct in every case.” (Cummiskey v. Superior Court (1992) 3 Cal.4th 1018, 1036 [13 Cal.Rptr.2d 551, 839 P.2d 1059], italics omitted.) “ ‘Nevertheless, when members of the grand jury ask questions, [the prosecutor] owes them the duty of correct advice.’ ” (Id. at p. 1035, quoting People v. Fisk (1975) 50 Cal.App.3d 364, 369 [123 Cal.Rptr. 414].)
It is Mason’s implied argument that the statements given by the three grand jurors are equivalent to asking for an instruction on Mason’s awareness of the consequences of throwing the firework into the swimming hole. That is not the case.
The three grand jurors plainly did not request an instruction at all, let alone “specifically request[] an instruction on lesser included offenses.” (Cummiskey v. Superior Court, supra, 3 Cal.4th at p. 1036.) That was the case with the statement: “I didn’t see that [Mason] willfully and maliciously started a fire.” Nor was there a request for an instruction on unlawful burning by a juror’s comments on the stupidity of Mason’s conduct or by the juror’s request for the “source” of the phrase “willingly or on purpose.” Each comment showed concern about the meaning of the instruction on arson or its application to Mason. However, none of the comments suggested an instruction on the lesser offense of unlawful burning.
Thus, for the reason there was no such request, the prosecutor had no duty to respond.[7]
D. The People Did Not Misinstruct the Grand Jury on the Mens Rea for Arson
Mason argues that the prosecution oversimplified the instruction for arson. Mason’s concern is the distinction between reckless burning (§ 452) and arson and the instruction’s failure to make that distinction. Mason relies on Stark v. Superior Court (2011) 52 Cal.4th 368 [128 Cal.Rptr.3d 611, 257 P.3d *784 41], which held that it was error to misinstruct the grand jury on the mens rea required for a crime. The case is not on point because the mens rea instruction, as based on Atkins and In re V.V., was correct.
The grand jury was given the standardized instruction on the elements of arson (CALCRIM No. 1515), with an additional sentence regarding intent and a separate instruction on natural and probable cause. (CALCRIM No. 240.) The instruction given for arson causing bodily injury, as is relevant to Mason’s claim, provided: “To prove that the accused is guilty of this crime the People must prove that; [¶] One, the accused set fire to or burned or caused the burning of forest land; [¶] Two, the accused acted willfully and maliciously; and [¶] Three, the fire caused great bodily injury to another person. [¶] . . . [¶] Someone committed an act willfully when he or she does it willingly or on purpose. It is not required that he intended to break the law or intend[ed] to cause fire to forest land. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else.” (Italics added.)
The italicized sentence does not appear in the standardized Judicial Council instructions (CALCRIM No. 1501). It nevertheless is a correct statement of the law as it appears in Atkins. The Supreme Court has explained the necessary intent for arson: “ ‘Because the offensive or dangerous character of the defendant’s conduct, by virtue of its nature, contemplates such injury [the burning of a relevant property], a general criminal intent to commit the act suffices to establish the requisite mental state.’ (Cf. People v. Colantuono [(1994)] 7 Cal.4th [206,] 215 [26 Cal.Rptr.2d 908, 865 P.2d 704] [assault].) Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.” (Atkins, supra, 25 Cal.4th at pp. 88-89.)
In In re V.V., the juveniles threw ignited firecrackers into dry brush. The Supreme Court held that the juveniles “were not required to know or be subjectively aware that the fire would be the probable consequence of their acts.” (In re V.V., supra, 51 Cal.4th at p. 1030.) “A defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of igniting and throwing a firecracker into dry brush would be the burning of the hillside.” (Ibid.)
Atkins and In re V.V. make clear that a defendant need not intend to bum the relevant property. All that is needed is an intent to do an act, the direct, natural, and highly probable consequences of which is the burning of a relevant property (here, forestland). The jury was so instructed. “An act *785 caused burning of forest land ... if the burning of forest land was the direct, natural, and probable consequence of the act and the burning of the forest land would not have happened without the act.”
Mason argues that the act must be one that necessarily would cause a fire, as in Atkins, supra, 25 Cal.4th 76, and In re V.V., supra, 51 Cal.4th 1020. In Atkins the defendant poured accelerant on a pile of weeds and set fire to them. (Atkins, at pp. 79-80.) The weeds were in an area of heavy brush on a ranch during the dry season when fire conditions were high. (Ibid.) In In re V.V., the minors ignited and threw firecrackers into dry brush on a hillside. (Id. at p. 1023.)
Although the actions of the defendants in Atkins and In re V.V. may have been actions that necessarily would have caused a fire, that is not the test, as is clearly set forth in both cases. All that is required is the intentional setting of a fire where the “direct, natural, and highly probable consequences would be the burning of the relevant structure or property.” (Atkins, supra, 25 Cal.4th at p. 89; see In re V.V., supra, 51 Cal.4th at p. 1029.) A necessary consequence is not required.
II
Sufficient Competent Evidence of Arson Was Tendered to the Grand Jury
A. Expert Testimony Was Admissible
Mason challenges the qualifications of the prosecution’s expert witness to testify on the subject of forest fires, wind conditions, and climate. However, the witness, Bryant Hart, an explosive enforcement officer with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives, testified that he had extensive experience with taking apart and disposing of explosives and investigating fire and explosive scenes. He testified as an expert on fireworks, specifically dangerous illegal fireworks. He had participated in three or four major investigations where the type of firework at issue here had started fires. Although he was not an expert on forest fires, wind conditions, and climate, he did not testify on those subjects. Instead, when asked the probability that the firework would start a fire, he stated the probability was “very high” based on his training, knowledge, and experience, and that the probability would increase to “extremely high” in conditions of low humidity, extremely high temperatures, dry brush, and on a steep canyon wall. Hart testified he had seen an aerial shell, the type of firework involved here, start a fire at least 10 to 15 times.
*786 Mason complains that Hart did not even go to the scene; however, the expert was entitled to rely on interviews, reports, and photographs of the scene of the fire on July 11, 2012. (Evid. Code, § 801.)[8] Hart testified he reviewed the evidence in the case. Specifically, he listened to Mason’s interview, listened to statements from eyewitnesses, reviewed the photographs associated with the case, and reviewed the sheriff’s report. Having done so, and with his expert knowledge of the type of firework involved, he was qualified to aver on the cause of the fire.
Mason argues Hart’s testimony was not “assistive” to the grand jury because he did not have the expertise to testify regarding the likelihood that a firework thrown into water would cause a forest fire. On the contrary, Hart testified he was familiar with illegal consumer fireworks, and how they are designed. He testified such fireworks are not designed to be exploded on water. He testified that if a firework were exploded on the surface of a body of water, all of the energy of the firework would be directed up into the air. He testified that the fireworks were water resistant, and that they would probably float for at least a little while. He had investigated another incident where fireworks burned while sitting in water.
Mason argues there was “massive danger” in allowing the expert to testify regarding the ultimate issue in the case, i.e., whether there was a high probability that the explosion of the firework would have started a fire. There is no merit to this argument. Evidence Code section 805 permits expert testimony on an ultimate issue in the case.
B. Relevant Evidence of Damage Was Not Prejudicial
Mason argues that the grand jury was tendered prejudicial evidence that should have been excluded. In particular, he argues the prosecution erroneously solicited evidence of the number of acres burned, the number of firefighters used to fight the blaze, the amount and type of equipment the firefighters used to fight the fire, and the cost of fighting the fire. He claims the irrelevance and prejudice of this evidence prevented the grand jury from reaching a fair and impartial decision on the merits of the case.
Evidence received by a grand jury must be admissible at trial, and the People concede that the evidence of which Mason complains was irrelevant *787 to the issues before the grand jury. (§ 939.6, subd. (b).) We nevertheless conclude the admission of the evidence was harmless.
An indictment based solely on incompetent evidence must be set aside on a section 995 motion. (People v. Backus (1979) 23 Cal.3d 360, 387 [152 Cal.Rptr. 710, 590 P.2d 837].) Where the indictment is not based solely on incompetent evidence, but the grand jury considered some incompetent evidence, the question is whether “the extent of inadmissible evidence, or the prosecutor’s failure to advise of limited admissibility, or both, was such that it compromised the grand jury’s ability to act independently and impartially in reaching its determination. If the record of the proceedings shows that it is unreasonable to expect that the grand jury could have limited its consideration to the admissible and relevant evidence, defendant has been denied due process.” (People v. Superior Court (Mouchaourab) (2000) 78 Cal.App.4th 403, 424 [92 Cal.Rptr.2d 829].)
On the other hand, “the fact that evidence that would have been excluded at trial was received by the grand jury does not render the indictment void where sufficient competent evidence to support the indictment was received by the grand jury.” (§ 939.6, subd. (b).) Sufficient evidence to support the indictment is sufficient evidence to establish probable cause. Probable cause “ ‘ “ ‘means such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. “Reasonable and probable cause” may exist although there may be some room for doubt.’ ” ’ [Citation.]” (Garcia v. Superior Court (2009) 111 Cal.App.4th 803, 818 [99 Cal.Rptr.3d 488], quoting People v. Mower (2002) 28 Cal.4th 457, 473 [122 Cal.Rptr.2d 326, 49 P.3d 1067].)
As we discuss in part III, post, there was sufficient evidence to establish probable cause that Mason was guilty of arson. Evidence regarding the damage caused by the fire does not change this.
C. Exclusion of Exculpatory Evidence
Mason attacks the indictment on the ground the deputy district attorney failed to introduce “critical exculpatory evidence.” The evidence omitted consisted of reports composed by a defense investigator after the investigator interviewed four people who had been at the swimming hole when the fire started. Mason claims the pertinent portions of the reports were the witnesses’ statements that they saw him trying to put the fire out, and expressing shock and remorse about the fire.
Section 939.71 provides in part: “If the prosecutor is aware of exculpatory evidence, the prosecutor shall inform the grand jury of its nature and *788 existence. ... If a failure to comply with the provisions of this section results in substantial prejudice, it shall be grounds for dismissal of the portion of the indictment related to that evidence.” (Id., subd. (a).)
The People claim, without evidence to support the claim, that the prosecution did not have the reports before the grand jury proceeding. Mason disagrees, pointing to a declaration from his counsel, stating “[i]t is my recollection that I provided [the deputy district attorney] with [the investigator’s] reports in the morning [of the preliminary hearing] well before calling [the investigator] to testify.”
When, as here, a defendant challenges an indictment by petition before trial on the ground the prosecutor withheld critical exculpatory evidence, we will not grant the petition unless “a reasonable probability exists that ‘a properly informed jury would have declined to find probable cause to indict had it known of the omitted evidence.’ ” (People v. Becerra (2008) 165 Cal.App.4th 1064, 1070 [81 Cal.Rptr.3d 348].)
We conclude no properly informed jury would have declined to find probable cause to indict, because the relevance of the evidence was to show that Mason did not intend to burn the forest, and the intent to burn the forest was not an element of the offense. The grand jury was instructed that it did not have to find that Mason intended to burn the forest. As discussed, that instruction was correct because it followed Atkins and In re V.V.
Additionally, the omitted reports regarding defendant’s intent, or lack thereof, to bum the forest, were statements about his surprise and remorse over the fire that ensued after he threw the firework into the water. Such evidence was duplicative. The grand jury heard from Anthony Sanchez, an eyewitness to the event who was unconnected to Mason. Sanchez testified that after Mason threw the firework he was “panicked” and was saying “I’m sorry, I’m sorry.” The grand jury heard the recording of Mason’s interview with the sheriff’s detective. The grand jury saw the apology letter Mason wrote in which he expressed remorse for his carelessness and asked forgiveness for his mistake.
D. There Was Sufficient Evidence of Injury and Destruction of an Inhabited Dwelling
The grand jury was instructed that count one was for arson with great bodily injury. An element of the crime was that the fire caused great bodily injury to another person. Great bodily injury meant “significant or substantial physical injury. It is an injury that is greater than minor or moderate harm.” Mason argues the injury to William Meggett, an inmate *789 working as a firefighter, was not significant enough to qualify as great bodily injury. Meggett suffered a fractured forearm when he was hit by a boulder while fighting the fire. He was on pain medication for six months, and at the time of the grand jury proceeding, his arm had still not healed. It was crooked and deformed, and he had limited use of the arm. There was a possibility the doctor would have to re-break the arm if the bones did not grow back correctly.
The emergency room physician who treated Meggett testified that Meggett suffered a fracture to his right forearm. The doctor put a splint on the arm and directed Meggett to see a follow-up physician to treat the injury. The doctor testified Meggett should have had full function of the arm after one month to six weeks, if given appropriate outpatient treatment.
While a broken bone may not constitute great bodily injury as a matter of law, “[i]t is common knowledge that a bone fracture is not merely a transitory bodily distress, but a severe and protracted injury which causes significant pain and requires considerable time to heal.” (People v. Johnson (1980) 104 Cal.App.3d 598, 609 [164 Cal.Rptr. 69].) The determination is a question of fact. (People v. Escobar (1992) 3 Cal.4th 740, 750 [12 Cal.Rptr.2d 586, 837 P.2d 1100].) As long as there is some information to support the grand jury’s determination, and it is not incorrect as a matter of law, we will not inquire as to the sufficiency of the evidence. (People v. Claflin (1978) 87 Cal.App.3d 1, 6 [150 Cal.Rptr. 693].)
Mason also argues that the evidence was insufficient to establish that an inhabited dwelling was destroyed, as alleged in count two. The basis of this claim is that the owner of the home that was destroyed testified to the grand jury that he visited the residence twice a month, but the fire captain testified at the preliminary hearing that the owner said he had been to the house within the last couple of years.
A residence is inhabited, even if vacant, if the residents intend to return. (People v. Jones (1988) 199 Cal.App.3d 543, 548 [245 Cal.Rptr. 85].) “[I]t is the present intent to use the house as a dwelling which is determinative.” (Ibid.) There was sufficient evidence before the grand jury that the owner intended to return. The owner testified, “We had every intention of continuing to use it in the same way that we have been using it since it was built in 1976, which was every couple of weekends.” Again, as long as there is some information to support the grand jury’s determination, we will not inquire as to the sufficiency of the evidence. (People v. Claflin, supra, 87 Cal.App.3d 1, 6.)
*790 III
There Was Probable Cause to Believe That the Forest Fire Was a Highly Probable Consequence of Igniting an Illegal, Aerial Explosive in the Middle of a Dry Forest and Grassland
Mason argues the evidence presented was insufficient to constitute reasonable or probable cause that he committed arson.
An indictment will not be set aside for lack of probable cause “ ‘ “if there is some rational ground for assuming the possibility that an offense has been committed and the accused is guilty of it.” ’ ” (People v. Uhlemann, supra, 9 Cal.3d at p. 667.) We must determine whether substantial evidence supports the grand jury’s decision to hold Mason to answer the charges. (People v. Davis (2010) 184 Cal.App.4th 305, 311 [108 Cal.Rptr.3d 536].) It is for the grand jury to weigh evidence and judge credibility, and all presumptions on appeal are in favor of the grand jury’s decision. (Ibid.)
Mason claims the evidence was insufficient because it did not show he started the forest fire willingly or on purpose. The Supreme Court has reiterated that the arson statute does not require such intent. “In Atkins, we held that arson requires only a general criminal intent and that the specific intent to set fire to, burn, or cause to be burned the relevant structure or forest land is not an element of arson.” (In re V.V., supra, 51 Cal.4th 1020, 1027.)
Mason also argues it was not objectively reasonable to expect that a fire would start as a result of his actions. He points to the fact that he told one of the detectives he had previously thrown a firework in the swimming hole without incident. However, there was other evidence indicating it would have been objectively reasonable to expect a fire to be the direct, natural, and highly probable consequence of lighting an illegal firework and throwing it into the swimming hole. The witnesses who were present all testified that it was hot and dry on the day in question. The firework sent sparks up and out in a circular pattern, something Mason would have known if he had thrown a firework in the swimming hole before. One witness testified he did not think it was smart to set off a firework as Mason did. Another said he was shocked anyone would bring a firework there in the summer because of the dry brush. Another witness said he did not understand why anyone would set off a firework in a dry canyon.
The expert testified the probability was very high that an illegal firework of the type Mason threw into the water would start a fire. That probability would be even higher in dry, hot conditions with dry brush around.
*791 Mason bought illegal fireworks, designed to shoot flares into the air, and exploded one of them in a swimming hole at the bottom of a narrow, dry, wooded canyon during extreme fire conditions. This is sufficient evidence to put a reasonable person on notice of the high probability that sparks from the explosive could ignite the grass or forest surrounding the swimming hole and provide probable cause for the commission of arson.
DISPOSITION
The petition for writ of prohibition or mandate is denied. The stay issued by this court on November 21, 2013, is vacated upon issuance of the remittitur.
Hull, J., concurred, and Mauro, J., concurred in the result.

 A reference to a section is to the Penal Code unless otherwise apparent from the context.

 The instructions, except for the modification set out in the body of the opinion, followed the language of section 451 and the standard CALCRIM instmction for arson “that cause[s] great bodily injury.” (CALCRIM No. 1501.) They stated:
“Count One pertains to the violation of Penal Code section 451[, subdivision] (a), arson which causes great bodily injury. To prove that the accused is guilty of this crime the People must prove that; [¶] One, the accused set fire to or burned or caused the burning of forest land; [¶] Two, the accused acted willfully and maliciously; and [¶] Three, the fire caused great bodily injury to another person. [¶] To set fire to or bum means to damage or destroy with fire either all or part of something, no matter how small the part. [¶] Someone committed an act willfully when he or she does it willingly or on purpose. It is not required that he intended to break the law or intend[ed] to cause fire to forest land. [¶] Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy or injure someone else.”
“Count Two pertains to the violation of Penal Code section 451[, subdivision] (b), arson which causes an inhabited structure to burn.” Count two tracks the general instructions of count one but adds: “A structure is any building. [¶] A structure is inhabited if someone lives there and either is present or has left but intends to return.”

 The instruction sounds in negligence. Negligence is defined in section 7, subdivision 2, as “a want of such attention to the nature or probable consequences of the act or omission as a prudent man ordinarily bestows in acting in his own concerns.”

 Although the instruction given the grand jury did not modify the term “probable” by the term “highly” to require that the fire must be a “highly probable” consequence of petitioner’s conduct, on the facts of this case the error is harmless.

 Section 739 provides in pertinent part: “When a defendant has been examined and committed, as provided in Section 872, it shall be the duty of the district attorney of the county in which the offense is triable to file in the superior court of that county within 15 days after the commitment, an information against the defendant which may charge the defendant with either the offense or offenses named in the order of commitment or any offense or offenses shown by the evidence taken before the magistrate to have been committed.”
Section 871.5, subdivision (a) provides in pertinent part: “When an action is dismissed by a magistrate ... or a portion thereof is dismissed . . . which may not be charged by information under Section 739, the prosecutor may make a motion in the superior court within 15 days to compel the magistrate to reinstate the complaint or a portion thereof and to reinstate the custodial status of the defendant under the same terms and conditions as when the defendant last appeared before the magistrate.”

 “[R]eckless [unlawful] burning is a lesser offense of arson . . . .” (Atkins, supra, 25 Cal.4th at p. 88; see § 452.) Reckless burning also is an included offense of arson because, disregarding the differences in mens rea and penalties, the offenses (“sets fire to or burns or causes to be burned”) are identical. (§§ 451, 452; see In re Stonewall F. (1989) 208 Cal.App.3d 1054, 1060, fn. 4 [256 Cal.Rptr. 578], disapproved on a different point in Atkins, supra, 25 Cal.4th at p. 90, fn. 5.)

 Although a grand jury need not sua sponte consider the necessarily included offense of unlawful burning unless requested, a petit jury trying the petitioner for arson must, on request, consider the offense. (People v. Solis (2015) 232 Cal.App.4th 1108, 1116 [181 Cal.Rptr.3d 877].)

 Evidence Code section 801 provides in part that an expert’s opinion may be based on “matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion.” (Id., subd. (b).)