Filed 10/6/20  P. v. Padilla CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FRANK PADILLA,<br><br>    Defendant and Appellant. | B302649<br><br>(Los Angeles County<br>Super. Ct. No. KA119781) |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Rogelio G. Delgado, Judge.  Affirmed as modified.

        John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

        Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven E. Mercer, Kathy S. Pomerantz, and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In a first amended information filed by the Los Angeles County District Attorney's Office, defendant and appellant Frank Padilla was charged with one count of arson of the property of another (Pen. Code, § 451, subd. (d); count 1)[1] and five counts of vandalism causing over $400 in damage (§ 594, subd. (a); counts 2–6). It was further alleged that defendant had five prior "strike" convictions within the meaning of the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12, subd. (a)-(d)), as well as three serious felony convictions (§ 667, subd. (a)(1)), and had served five prior prison terms (§ 667.5, subd. (b)).

The jury found defendant guilty of all counts and, as to the vandalism counts, found it true that the damage caused was $400 or more. Defendant admitted the alleged priors.

The trial court sentenced defendant to a total term of 35 years to life in state prison, comprised of 25 years to life on count 1 plus two five-year serious felony enhancements pursuant to section 667, subdivision (a)(1). The court imposed and struck one-year sentences for the enhancements under section 667.5, subdivision (b). It imposed, but stayed pursuant to section 654, a 16-month sentence for each of the five vandalism counts. Finally, the court imposed various assessments and fines.

In this timely appeal, defendant argues that (1) there was insufficient evidence to support his arson conviction; (2) the trial court incorrectly instructed the jury on the mental state required for arson; and (3) the court violated his constitutional rights by imposing the assessments and restitution without first finding his ability to pay. We disagree with each of these contentions.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

We find, however, that the trial court erred in failing to impose the criminal conviction assessment (Gov. Code, § 70373) and court operations assessment (§ 1465.8) as to each of the six counts. We modify the judgment to correct this error. Additionally, the abstract of judgment must be amended to correct the omission of defendant's conviction and stayed sentence on count 6.

As modified, we affirm the judgment.

## BACKGROUND

### I. The People's Evidence

A. <u>The fire</u>

At approximately 12:25 a.m., on October 1, 2018, Bernstein Yao (Yao) left his apartment at the Hacienda Gardens in Rowland Heights to buy whiskey for a party he was hosting. Yao saw defendant and another man standing by a dumpster in the carport, which was separated from the apartment building by a driveway. As he walked past defendant, Yao saw defendant throw lit firecrackers near the dumpster "many times."

Yao drove to a nearby store. When he returned a few minutes later, defendant and the other man were still in the carport. Defendant threw three to five more firecrackers near the dumpster. Yao returned to his apartment and, about 20 minutes later, saw that a fire had erupted in the carport where he had observed defendant throwing the firecrackers.

Deputy Curtis Sinclare of the Los Angeles County Sheriff's Department (LASD) responded to the fire and saw the carport and a few vehicles "fully engulfed in flames." The fire department arrived shortly thereafter and extinguished the fire. Deputy Sinclare observed that several vehicles had been burned and were "total losses" and that the carport had been "completely

destroyed[.]" He also saw that several windows in the adjacent apartment building had shattered.

According to the Hacienda Gardens' property manager, it cost $8,987.77 to repair the carport and $2,875 to replace the damaged windows. The owners of four vehicles that had been parked in the carport each testified that their respective cars had been burned in the fire and were total losses.

B. The investigation

LASD Detective Oscar Corcio was assigned to the arson and bomb unit and qualified as an expert in fire and arson investigations. When he investigated the scene of the extinguished fire on the afternoon of October 1, 2018, he observed several burned vehicles in the carport, that the roof of the carport had completely burned, and that windows and blinds in the adjacent apartment building had "'radiant heat damage.'"

Detective Corcio viewed a surveillance video from the time of the fire, which was also played for the jury. The video showed two individuals loitering in the carport around the dumpster.[2] A few minutes later, the two individuals jumped over a wall and smoke started to billow from the dumpster area. The fire continued to grow and "consume . . . everything in its path."

Based on his investigation, Detective Corcio determined that the fire was not caused by mechanical issues with the damaged vehicles, ruptured gas lines, electrical issues, or lightning strikes. Rather, he opined that the fire was set deliberately and intentionally in the area of the carport near the dumpsters.

---

[2]     LASD Deputy Andrew Shackelford testified that he recognized defendant, with whom he had prior contacts, as one of the individuals in the video.

4

At the time of the fire, defendant was under parole supervision and wore a GPS ankle bracelet that monitored his location. Tracking data showed that he was at the carport between 11:10 p.m. on September 30, 2018, to 12:16 a.m. on October 1, 2018.

## II. Defendant's Evidence

Defendant testified that he went to the Hacienda Gardens with a man named "Anthony" on the night of September 30, 2018, in violation of his parole curfew. He was "cutting through the apartments" on his way to his mother's home when he noticed that the dumpster was full. He decided to sort through the dumpster for recyclables. Anthony "found some fireworks in the trash" and "tossed a few . . . towards the street[.]" Meanwhile, defendant "was just going through the stuff" in the dumpster. Defendant denied that he lit or threw the fireworks.

Anthony tossed a firework too close to the dumpster and "stuff caught on fire." Defendant did not understand why Anthony would do that and "start[ed] tripping out on [Anthony] . . . ." Defendant unsuccessfully tried to extinguish the fire. His "instinct was . . . to get away from the fire," so he jumped over the wall and left the scene. Defendant "heard sirens in the distance" as he was leaving, which gave him comfort that the fire would be taken care of. Defendant acknowledged that he "could have ran inside the apartments" to get a fire extinguisher, but it "didn't cross [his] mind at the time."

# DISCUSSION

## I. Evidence Sufficient on Count 1

Defendant contends that his conviction for arson under section 451 (count 1) must be reversed because there is insufficient evidence that he acted willfully and maliciously.[3]

### A. Standard of review

"'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] In so doing, a reviewing court 'presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.'" (*People v. Edwards* (2013) 57 Cal.4th 658, 715.)

### B. Relevant law

"A person is guilty of arson when he or she *willfully and maliciously* sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property." (§ 451, italics added.)

In this context, "'[t]he word "willfully[]"' . . . implies simply a purpose or willingness to commit the act . . . . It does not require any intent to violate law, or to injure another, or to acquire any advantage.'" (*In re V.V.* (2011) 51 Cal.4th 1020, 1027.)

---

[3]    Defendant does not challenge the sufficiency of the evidence regarding any other count.

"Although '[m]alice as universally understood by the popular mind has its foundation in ill-will' [citation], it need not take the form of malevolence or ill will. [Citations.] . . . Malice in fact—defined as 'a wish to vex, annoy, or injure' [citation]— consists of actual ill will or intent to injure." (*In re V.V., supra*, 51 Cal.4th at p. 1028.) "[M]alice in law[,]" in contrast, "is defined . . . as 'an intent to do a wrongful act, established either by proof or presumption of law.'" (*Ibid.*) For arson, malice in law "will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*Ibid.*)

Arson's "willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; '"in short, a fire of incendiary origin."' [Citations.] 'Because the offensive or dangerous character of the defendant's conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state.' [Citation.] Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*People v. Atkins* (2001) 25 Cal.4th 76, 88–89 (*Atkins*).)

In *In re V.V., supra*, 51 Cal.4th 1020, a minor lit a large firecracker, which was then thrown by another minor onto a brush-covered hillside. (*Id.* at p. 1024.) The firecracker exploded, causing a brush fire. (*Ibid.*) The Supreme Court concluded that substantial evidence supported the juvenile court's finding that the minors committed arson of forest land (§ 451, subd. (c)). (*In*

*re V.V.*, at pp. 1026–1033.) It mattered not that the minors "did not intend to set the hillside on fire and tried to avoid such a consequence." (*Id.* at p. 1030.) The Supreme Court held that "[a] defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of igniting and throwing a firecracker into dry brush would be the burning of the hillside" and that minors "were aware of such facts." (*Ibid.*)

C. <u>Analysis</u>

Defendant does not contest that there was sufficient evidence for the jury to find that he threw lit firecrackers into the dumpster, which caused the fire. Rather, he claims that there was insufficient evidence to show that he acted willfully and maliciously, as required under section 451. We disagree.

Yao testified that, on his way to a nearby store, he saw defendant throw lit firecrackers near the dumpster in the carport "many times." When Yao returned from the store a few minutes later, he witnessed defendant in the same area, still throwing firecrackers near the dumpster. Approximately 20 minutes later, Yao observed that a fire had started in the area that he had observed defendant. Defendant testified that the dumpster in the carport was full of trash. He also admitted that he fled the scene after the fire erupted, without attempting to locate a fire extinguisher or call for help.

From this evidence, the jury could reasonably infer that defendant intentionally and unjustifiably threw lit firecrackers in the carport over an extended period; it was not a one-time, accidental occurrence. Such conduct is willful. (See *In re V.V.*, *supra*, 51 Cal.4th at p. 1027.) Any reasonable person would know that repeatedly throwing lit firecrackers around a dumpster full

8

of trash in a carport occupied by numerous vehicles would create an obvious fire hazard, and that a resulting fire would be "the direct, natural, and highly probable consequence . . . ." (*Id.* at p. 1030.) This constitutes substantial evidence establishing the requisite malice for arson. (*Id.* at p. 1028 ["""An intentional act creating an *obvious fire hazard* . . . done without justification . . . would certainly be malicious . . . ."""]; see also *id.* at p. 1031, fn. 6.)

Defendant attempts to distinguish *In re V.V.*, *supra*, 51 Cal.4th 1020 by noting that, unlike the minors in that case (see *id.* at pp. 1030–1031), he made no admissions "demonstrating that he knew a fire was likely from throwing firecrackers." However, defendant was "not required to know or be subjectively aware that the fire would be the probable consequence of [his] acts." (*Id.* at p. 1030.) It is enough that he "act[ed] with awareness of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of" his actions would be the burning of the carport. (*Ibid.*; see also *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, 784 (*Mason*) ["[A] defendant need not intend to burn the relevant property. All that is needed is an intent to do an act, the direct, natural, and highly probable consequences of which is the burning of a relevant property . . . ."].)[4]

Contrary to defendant's contention, the evidence is sufficient to show that defendant was subjectively aware of the underlying circumstances that created such an obvious fire

---

[4] Defendant also contends that *In re V.V.*, *supra*, 51 Cal.4th 1020 and *Atkins*, *supra*, 25 Cal.4th 76 misinterpreted the mental state required for arson. We, however, are bound by these cases. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

9

hazard.  First, he knew that the dumpster was full.  Second, while defendant denied that he was the person that threw the firecrackers, instead blaming Anthony, he testified that he "didn't understand why [Anthony] would throw something like [the firecrackers] so close to the dumpster" and so he "start[ed] tripping out on [Anthony] . . . ."  The jury could infer from this testimony that defendant subjectively understood that throwing firecrackers near the dumpster was hazardous.  Despite this knowledge, defendant proceeded to engage in the wrongful act.  Malice in law could be presumed.

## II.  No Instructional Error

Defendant contends that the trial court committed reversible error by incorrectly instructing the jury on the mental state required for arson.

### A.  Relevant proceedings

The trial court instructed the jury with CALCRIM No. 1515, the standard instruction on arson.  (*Mason*, *supra*, 242 Cal.App.4th at p. 784.)  As given, the instruction states:  "The defendant is charged in Count One with arson in violation of Penal Code section 45l[, subdivision] (d).  [¶]  To prove that the defendant is guilty of this crime, the People must prove that:  [¶] 1.  The defendant set fire to or burned or caused the burning of a structure or property;  [¶]  AND  [¶]  2.  He acted willfully and maliciously.  [¶]  To *set fire to or burn* means to damage or destroy with fire either all or part of something, no matter how small the part.  [¶]  Someone commits an act *willfully* when he or she does it willingly or on purpose.  [¶]  Someone acts *maliciously* when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure

10

someone else. [¶] A *structure* is any building. [¶] Property means personal property or land other than forest land."

Defendant did not object to or request any modification of the instruction.

B. Standard of review and relevant law

"'We determine whether a jury instruction correctly states the law under the independent or de novo standard of review. [Citation.] Review of the adequacy of instructions is based on whether the trial court "fully and fairly instructed on the applicable law."' [Citation.] The trial court 'has a duty to give instructions on the general principles of law governing the case, even though not requested by the parties, but it need not instruct on specific points developed at the trial unless requested.' [Citation.] Generally, 'it is enough for the court to instruct [on the elements of a crime] in the language of the statute when the defendant fails to request an amplification thereof.' [Citation.] 'Even if such an instruction "cannot be commended as a full or clear exposition of the meaning of the section of the code, still it cannot be said that it was error for the court in giving the law to have conformed to the language of the code, and to have omitted what that code itself omits."' [Citation.]

"'"Where an instruction on a particular point or points as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness, if defendant desires additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points, he must properly request the same, otherwise error cannot be predicated upon the failure to give such additional instruction."' [Citation.] 'The

11

defendant will not be heard to complain where he has failed to request an amplification of an instruction [given in the language of the statute].' [Citation.]" (*People v. Turner* (2019) 37 Cal.App.5th 882, 887–888 (*Turner*).)

C. <u>Analysis</u>

Defendant argues that the arson instruction given by the trial court was erroneous because it omitted an element—that defendant "acted 'with awareness of facts that would lead a reasonable person to realize that the direct, natural[,] and highly probable consequence of igniting and throwing a firecracker' (*In re V.V., supra*, 51 Cal.4th at p. 1030)[] would be the burning of property."

The applicable arson statute, however, does not include the "direct, natural and highly probable consequence" language deemed essential by defendant. Rather, section 451 states that "[a] person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property."

CALCRIM No. 1515, as given by the trial court here, tracked the statutory language and included all elements of the offense by instructing that the People were required to prove that (1) "defendant set fire to or burned or caused the burning of a structure or property;" and (2) defendant "acted willfully and maliciously." In addition, the instruction provided correct definitions of "willfully and maliciously." It explained that "[s]omeone commits an act willfully when he or she does it willingly or on purpose." This comports with the statutory definition that "'willfully,' when applied to the intent with which an act is done . . . , implies simply a purpose or willingness to

12

commit the act[.]" (§ 7, subd. (1).) The instruction also explained that "[s]omeone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else." This is consistent with the statutory definition that "'[m]aliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act[.]" (§ 450, subd. (e); see also § 7, subd. (4).)

The Supreme Court in *In re V.V.*, *supra*, 51 Cal.4th 1020 did not add an element to the crime of arson or find the statutory definitions of willfully and maliciously inapplicable. Rather, it explained that the element of malice can take two forms—malice in fact and malice in law. (*Id.* at p. 1028.) Malice in fact is "'a wish to vex, annoy, or injure' [citation]—consist[ing] of actual ill will or intent to injure"—while malice in law is "'an intent to do a wrongful act . . . [,]'" which "may be 'presumed' or 'implied' from the intentional doing of the act without justification or excuse or mitigating circumstances." (*Ibid.*) In the specific case of arson, malice in law "will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*Ibid.*)

In *Atkins*, *supra*, 25 Cal.4th 76, the Supreme Court had previously held that arson requires only "a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Id.* at p. 89.) In *In re V.V.*, *supra*, 51 Cal.4th 1020, the Supreme Court stated that the phrase "'. . . *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or*

13

*property*[]'" "describes arson's malice requirement, i.e., that the willful and intentional act is committed under circumstances that create an obvious fire hazard." (*Id*. at p. 1031, fn. 6.)

The language regarding a direct, natural, and highly probable consequence does not add an element to the crime of arson but rather provides an amplification of the statutory definition of malice conveyed in the instruction given to the jury at defendant's trial. Because the trial court's instruction was an accurate statement of the law, conforming to the statutory language, the court had no sua sponte duty to instruct on the amplification of the malice requirement provided in *In re V.V.* and *Atkins*. (*Turner, supra*, 37 Cal.App.5th at pp. 887–888.) Defendant's failure to ask for """. . . additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions . . . []"""" forfeited his claim of error on appeal. (*Id*. at p. 888; see also *People v. Rangel* (2016) 62 Cal.4th 1192, 1223 [where jury instruction was legally correct, the "defendant's failure to propose any modification to the instruction forfeit[ed] the claim of instructional error"].)

## III. Assessments and Fines

The trial court ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)), a $30 criminal conviction assessment (Gov. Code, § 70373), and a $40 court operations assessment (§ 1465.8). The court imposed but stayed a $300 parole revocation fine (§ 1202.45).

"As a threshold matter, we must correct the trial court's error in failing to impose the [$30 criminal conviction and $40 court operations assessments] as to each count. (Pen. Code, § 1465.8, subd. (a) [assessment applies to 'every conviction']; Gov. Code, § 70373, subd. (a) [same]; see also *People v. Smith*

14

(2001) 24 Cal.4th 849, 853 [appellate court may correct error in not imposing mandatory financial obligations].)" (*People v. Hicks* (2019) 40 Cal.App.5th 320, 324 (*Hicks*), review granted Nov. 26, 2019, S258946.) Because defendant was convicted of six counts, the court was required to impose a total of $180 in criminal conviction assessments and $240 in court operations assessments.

Defendant argues that the trial court erred in imposing the assessments and fines without first determining that he had the ability to pay, in violation of his federal and state constitutional rights. In support, he relies on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).[5]

Based on the constitutional guarantee of due process and ban on excessive fines, *Dueñas* held that trial courts may not impose the standard $30 per count criminal conviction assessment, $40 per count court operations assessment, and minimum $300 restitution fine without first ascertaining the "defendant's present ability to pay." (*Dueñas, supra,* 30 Cal.App.5th at pp. 1164, 1171, fn. 8.) We, however, have "conclude[d] that *Dueñas* was wrongly decided[.]" (*Hicks, supra,* 40 Cal.App.5th at p. 322.) It follows that we reject defendant's challenge to the assessments and fines.

---

[5]     Although defendant was sentenced 10 months after *Dueñas* was decided, he failed to object in the trial court to the imposition of the assessments or fines on any basis. While that generally forfeits a challenge on appeal (see *People v. Aguilar* (2015) 60 Cal.4th 862, 864), because the court did not orally pronounce the correct, total amount owed by defendant at sentencing, we decline to find forfeiture.

15

## IV. Correction of Abstract of Judgment

Although not raised by either party, we observe that the abstract of judgment omits defendant's conviction and stayed sentence on count 6. "When an abstract of judgment does not reflect the actual sentence imposed in the trial judge's verbal pronouncement, this court has the inherent power to correct such clerical error on appeal, whether on our own motion or upon application of the parties." (*People v. Jones* (2012) 54 Cal.4th 1, 89.) We direct the issuance of an amended abstract correcting the omission.

## DISPOSITION

The judgment is modified to impose six $30 criminal conviction assessments (total $180) under Government Code section 70373 and six $40 court operations assessments (total $240) under section 1465.8. The trial court is directed to prepare an amended abstract of judgment reflecting these modifications, as well as correcting the omission of the conviction and stayed sentence on count 6, and to forward a certified copy to the Department of Corrections and Rehabilitation.

As modified, the judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
ASHMANN-GERST

We concur:

_____, P. J.          _____, J.
LUI                                    HOFFSTADT

16