Filed 2/28/22  P. v. Kamilchu CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDUARD KAMILCHU,<br><br>Defendant and Appellant. | C092636<br><br>(Super. Ct. No. 18FE001319) |

Police responding to a 911 call arrived at S. D.'s house, where her former boyfriend, defendant Eduard Kamilchu, was inside the house in violation of a restraining order.  Officers entered and positioned themselves at the base of the stairs to the second floor.  Defendant, who was upstairs, used kerosene to light a lamp on fire and threw it down the stairs.  He then ignited the fumes of the one-gallon kerosene can, engulfing the stairwell, and eventually much of the house, into flames.  A jury found defendant guilty of arson of an inhabited structure.

Defendant contends the trial court erred in failing to instruct the jury, sua sponte, on the lesser included offense of unlawfully causing a fire.  Additionally, prior to oral

1

argument, we granted defendant's request for supplemental briefing on the effect, if any, of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) on defendant's case.

We reject defendant's claim that the jury should have been instructed on the lesser included offense, as the evidence defendant was guilty only of the lesser offense was not substantial enough to merit consideration by the jury. However, we conclude that, in light of Senate Bill No. 567, we must remand the matter to the trial court for resentencing.

## BACKGROUND

Defendant was charged with two counts of assault with a deadly weapon or instrument on a peace officer by force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (c); counts one & two); willfully and maliciously setting fire to, burning, or causing to be burned an inhabited structure or property (§ 451, subd. (b); count three); and knowingly violating a protective order (§ 273.6, subd. (d); count four).

### A

### *The Prosecution's Case*

Defendant was S. D.'s former boyfriend. On January 19, 2018, S. D.'s two sisters went to the hospital to pick her up after she gave birth to her second child with defendant. S. D. and her sisters went to S.D.'s house to pick up some items. One of S. D.'s sisters waited in the kitchen while S. D. and her other sister went upstairs. S. D.'s sister, who remained downstairs, grew concerned defendant might be in the house and, knowing of the restraining order S. D. had against defendant, told her sisters to hurry. S. D. and her sisters met in the garage. S. D. was on the phone arguing with defendant and was considering going back inside. Her sister called 911. She believed defendant was threatening S. D.

---

[1] Undesignated section references are to the Penal Code.

Responding to the call, Officer Christopher Kinney reviewed a history indicating defendant had previously barricaded himself in the same house. Kinney and Officer Ryan Ellis went to an adjacent yard and saw a male climbing out a second-story window of S. D.'s house. Kinney drew his firearm and ordered the male to show his hands, and the male went back inside. Seconds later, Kinney and Ellis saw a rifle barrel point out the window "and start sweeping" in their direction. There was a green laser or optic on the top of the rifle barrel. Kinney and Ellis ran.

Officer Daniel Emerson entered S. D.'s house through the open garage and made his way to the stairwell. Officers Brandon Culbertson and Jason Miller joined him at the base of the stairs. The stairs went up to a landing, turned back, and went up further to the second floor. The officers identified themselves as Elk Grove Police. Defendant, who was upstairs, threw several items down the stairs. Emerson directed defendant to come downstairs with his hands up. At some point, a lamp came down the stairs. There was no lampshade and the light bulb was lit on fire. It continued to burn where it landed at the base of the stairs. Miller heard defendant say something like, " 'You are messing with my life.' " Then another item came down the stairs. It landed toward the bottom of the staircase "and it completely exploded, and engulfed the entire . . . stairwell." The opening of the stairwell was engulfed in flames. Miller testified: "[I]t was shocking, to say the least. You could definitely feel the heat coming from it. I've never seen anything like that before, so I didn't know what caused it or how he accomplished making that happen." The officers evacuated. A recording from Emerson's body camera was played for the jury.[2]

Officer Miller took up a position outside the house. He saw a window open and smoke coming out. He then saw a dark object coming out of the window. Miller saw a

---

[2]     The recording, People's exhibit 83, is part of the augmented record on appeal.

3

"flash, like a muzzle flash . . . ." He fired 13 to 20 shots at the window with his rifle. Detective Jorge Benitez fired approximately four rounds at the window. This sequence repeated two more times. Officer Emerson also fired shots at the window.

Eventually, the house was completely engulfed in flames. Defendant jumped out a window into the backyard. A SWAT team took him into custody.

After the fire had been extinguished, police found the barrel and frame assembly of an air rifle in a bedroom. They also found a bullet, a cartridge case, and an ammunition can. Among the items in the ammunition can, police found detonated cartridge cases that appeared as though they had exploded rather than having been fired from a firearm. It was possible the heat from the fire detonated the cartridges. Police found additional ammunition. Police also found a gas mask and two lighters in the backyard below the window from which defendant had jumped.

When he investigated the scene after the fire had been extinguished, Assistant Chief Brett Shurr of the Cosumnes Community Service Fire Department observed a rainbow sheen consistent with a petroleum substance in a pool of water on the first floor. He also found a one-gallon metal can with a spout and a dent in the side on or near the base of the stairs. The can was consistent with the type of container used for ignitable fluids. Asked how the lamp had been made to burn, Shurr said: "[M]y opinion is that something" such as an ignitable liquid "was applied to the end of that lamp in order to sustain burning as it flew through the air." As for the subsequent burst of flames, Shurr said: "What I believe, in my expert opinion, is . . . that an ignitable liquid was dumped or thrown down the stairs. The motion of that liquid falling through the air caused the liquid to somehow vaporize, and provide the vapor and the oxygen mixture, and then those vapors . . . travel through the air, and they come in contact with the burning lamp that's on the floor, and then the fire flashes back to where the liquid is."

## B

*The Defense's Case*

Defendant had been staying at S. D.'s house and saw her at the hospital before and after she gave birth to the baby. Defendant was at S. D.'s house when she arrived with her sisters, although he knew he was not allowed to be there. He heard one of S. D.'s sisters say he was in the house and that they should call the police. Defendant waited a while and eventually decided to go. When he started to leave through a window, he saw people in the backyard he assumed to be police. He retreated back inside.

Defendant testified he feared police based on past experiences. On one occasion when defendant was arrested, the arresting officer turned off his dashboard camera and went through defendant's wallet. When defendant went through booking, he was "jumped by seven deputies, or several deputies." They tackled him, claimed he was resisting, and struck and kicked him. On another occasion, police showed up at the house to do a wellness check. When defendant stepped outside, he got "blind-sided" or tackled. An officer struck defendant with the butt of his rifle.

Defendant heard police announce themselves when they were at the base of the stairs of S. D.'s house. Defendant started throwing objects down the stairs to deter police from approaching him. Defendant thought the upstairs would not be a good place to get arrested because there were no witnesses or cameras. Defendant poured kerosene on a lamp, lit it, and threw it downstairs. Defendant did so "as a deterrent, to keep these officers from approaching [him], to -- I had a fear. I was self-preserving myself, trying to make a barrier between me and them. [¶] This whole time, this is what I'm doing. This is my mindset." Defendant then called downstairs, saying, " 'I'm fearing for my life.' " Defendant got the can of kerosene and "tossed this kerosene down the stairs, or tossed it at the stairs." Before throwing the can of kerosene, defendant "lit the fumes."

Asked if he chose to start a fire, defendant responded, "I didn't choose to start a fire. I chose to make a barrier." However, when asked if this barrier was made of fire,

5

defendant responded, "At first I tried other means of making this barrier, and I was forced to make this other barrier, yes." He later acknowledged he had created a "flame barrier." Defendant acknowledged that, in a postarrest interview, a police officer asked him if it was a bad idea to throw an ignited can of kerosene down the stairs. He responded, " 'I mean, it made them back off.' " He also acknowledged he had told the officer the kerosene can was full when he retrieved it, but at trial he testified it was half full.

Defendant testified he may have used an air rifle to pry or prop open a window. He never pointed the air rifle at officers. There was no scope on the air rifle.

## C

### *Verdict And Sentence*

The jury found defendant not guilty of assault with a deadly weapon or instrument on a peace officer by force likely to produce great bodily injury and on all lesser included offenses. The jury found defendant guilty of arson of an inhabited structure. With the jury unable to reach a verdict on violation of a protective order, the trial court declared a mistrial on that count. The trial court sentenced defendant to the upper term of eight years.

## DISCUSSION

## I

### *Instruction On Lesser Included Offense Of Reckless Arson/Unlawfully Causing A Fire*

Defendant asserts the trial court erred in failing to instruct the jury on the lesser included offense of reckless arson/unlawfully causing a fire. Defendant asserts the evidence established that he "did not intend 'to set fire to' the house" and that he "did nothing to directly set fire to the house." Rather, he "threw a 'fireball' at the officers being motivated by a desire to avoid an encounter with them." (Fn. omitted.) Defendant asserts that, assuming his intent involved an assault on the police officers by throwing the objects at them, his "state of mind showed that [his] act heedlessly, ignored the risk of setting the house on fire." According to defendant, whether he willfully, unlawfully, and

6

maliciously set fire to the house or did so recklessly "depended on what the jury determined to be his state of mind." Defendant maintains there was a sufficient basis for the jury to find the crime was less than that charged, and, therefore, it was error for the trial court not to instruct the jury sua sponte on the lesser included offense of reckless arson/unlawfully causing a fire.

" ' "It is settled that in criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case." [Citation.] That obligation has been held to include giving instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) The trial court is required to instruct on a lesser included offense "whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the jury." (*Id*. at p. 162.) However, the court is not required to instruct on theories that are not supported by such substantial evidence. (*Ibid*.) "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense . . . ." (*Ibid*.) " ' "Substantial evidence" in this context is " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " that the lesser offense, but not the greater, was committed.' " (*People v. Romero* (2008) 44 Cal.4th 386, 403, quoting *Breverman*, at p. 162.) A trial court's omission in failing to instruct on an allegedly lesser included offense is reviewed de novo. (*People v. Nieves* (2021) 11 Cal.5th 404, 463, citing *People v. Cole* (2004) 33 Cal.4th 1158, 1218.)

"A person is guilty of arson when he or she willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any

7

structure, forest land, or property." (§ 451.) "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. (1).) " 'Willfully implies no evil intent; " 'it implies that the person knows what he is doing, intends to do what he is doing and is a free agent.' " ' " (*People v. Atkins* (2001) 25 Cal.4th 76, 85 (*Atkins*).) "The use of the word 'willfully' in a penal statute usually defines a general criminal intent, absent other statutory language that requires 'an intent to do a further act or achieve a future consequence.' " (*Ibid.*) In the chapter of the Penal Code addressing arson, the term "maliciously" "imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).) "As with 'willfully,' the statutory definition of 'maliciously,' in the context of arson, requires no specific intent." (*Atkins*, at p. 85.)

Reckless arson or unlawfully causing a fire (§ 452) is a lesser included offense of arson (§ 451). (*Atkins*, *supra*, 25 Cal.4th at p. 88 ["The fact that reckless burning is a lesser offense of arson is also not dispositive"]; *People v. Hooper* (1986) 181 Cal.App.3d 1174, 1182 ["we conclude that unlawfully causing a fire is a lesser included offense of arson"], disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 189, fn. 7.) "A person is guilty of unlawfully causing a fire when he recklessly sets fire to or burns or causes to be burned, any structure, forest land or property." (§ 452.) In the chapter of the Penal Code addressing arson, "recklessly" means, in pertinent part, that "a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." (§ 450, subd. (f).)

8

Our high court in *Atkins* characterized arson as a general intent crime. (*Atkins*, *supra*, 25 Cal.4th at pp. 84, 86.) " 'A crime is characterized as a "general intent" crime when the required mental state entails only an intent to do the act that causes the harm; a crime is characterized as a "specific intent" crime when the required mental state entails an intent to cause the resulting harm.' " (*Id*. at p. 86.) Arson (§ 451) "does not require an additional specific intent to burn a 'structure, forest land, or property,' but rather requires only an intent to do the act that causes the harm." (*Atkins*, at p. 86.) The statute "requires only a general criminal intent and . . . the specific intent to set fire to or burn or cause to be burned the relevant structure or forest land is not an element of arson." (*Id*. at p. 84; accord, *In re V.V.* (2011) 51 Cal.4th 1020, 1027.) The "description of the proscribed act fails to refer to an intent to do a further act or achieve a future consequence." (*Atkins*, at p. 86.) For present purposes, we need not delve into defendant's arguments as to the usefulness of "the *malapropos* terms 'general' and 'specific' intent."

"The critical distinction between arson, as defined in section 451, and unlawfully causing a fire, as defined in section 452, is the mental state with which the burning is carried out." (*People v. Hooper*, *supra*, 181 Cal.App.3d at p. 1181.) Arson's "willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire . . . ." (*Atkins*, *supra*, 25 Cal.4th at p. 88.) "Thus, there must be a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Id*. at p. 89; accord, *In re V.V.*, *supra*, 51 Cal.4th at p. 1029; *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, 778, 784.) "On the other hand, the offense of unlawfully causing a fire covers reckless accidents or unintentional fires, which, by definition, is committed by a person who is 'aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property.' [Citations.] For example, such

9

reckless accidents or unintentional fires may include those caused by a person who recklessly lights a match near highly combustible materials." (*Atkins*, at p. 89.)

Defendant asserts that "if any *causing* of a fire which *causes* the structure to burn down is sufficient for arson, then not only is there no distinction between intended and unintended acts but the crime of arson becomes one of strict liability . . . ." This is somewhat reminiscent of our colleague's dissenting opinion in *Mason v. Superior Court*, *supra*, 242 Cal.App.4th at page 773. In his dissent, Justice Blease stated that in *Atkins*, the California Supreme Court "took the puzzling, and to my mind unnecessary, course of redefining the singular act of 'caus[ing] to be burned' as the undefined and uncodified '*act that causes*' a fire." (*Id*. at p. 792 (dis. opn. of Blease, J.), quoting *Atkins*, *supra*, 25 Cal.4th at p. 86.) Justice Blease continued: "The court thereby redefined arson as a strict liability offense. Without more, the 'act that causes' a fire is merely the *means* by which the fire was initiated. To fill the void between the means and end -- the fire -- the court inserted an additional element requiring that the fire be the natural and highly probable consequence of the act. [Citation.] This again redefined arson, this time as a species of negligence." (*Mason*, at p. 792 (dis. opn. of Blease, J.).) And yet, Justice Blease himself *also* authored the opinion of the court in *Mason*. After reviewing our high court's discussion in *Atkins*, the opinion of the court in *Mason* concluded: "Because we follow the Supreme Court's interpretation of 'causes to be burned,' we shall affirm the indictment on the ground the grand jury proceedings show there was probable cause to believe that the natural and highly probable consequence of the act of igniting and throwing a large, unlawful aerial firework into the swimming hole in the middle of a forest and grassland in extreme fire conditions would be the burning of the forestland." (*Mason*, at pp. 778-779, fn. omitted.) Like Justice Blease (*id*. at p. 791 (dis. opn. of Blease, J.)), we recognize the binding effect of our high court's determinations in *Atkins* and *In re V.V.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455). Accordingly, we reject defendant's contentions that are inconsistent with those

10

determinations and his criticism of what he characterizes as our high court's "incomplete . . . analysis" in *Atkins*. And, following our high court, contrary to defendant's implied contention, the prosecution was not required to prove he intended to set fire to the house or to burn the house down. It was required to prove "a general intent to willfully commit the act of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property." (*Atkins*, at p. 89; accord, *In re V.V.*, *supra*, 51 Cal.4th at p. 1029.)

Here, the record contains no " 'evidence from which a jury composed of reasonable [persons] could . . . conclude[]' " defendant committed unlawfully causing a fire/reckless arson (§ 452) but not arson (§ 451). (*People v. Romero*, *supra*, 44 Cal.4th at p. 403, quoting *People v. Breverman*, *supra*, 19 Cal.4th at p. 162.) There was no evidence reasonably suggesting the offense was anything less than arson. Defendant admitted he doused the lamp with kerosene, lit it on fire, and threw it down the stairs, where it continued to burn. He then ignited the kerosene fumes and threw the full or half-full, one-gallon kerosene can down the stairs where it burst into flames causing the house to burn. Defendant testified he threw the can of ignited kerosene "on the stairs" and "at the stairs" of the structure. These were deliberate acts. There was no evidence defendant started the fire through, for example, a reckless accident or unintentional conduct analogous to "recklessly light[ing] a match near highly combustible materials." (*Atkins*, *supra*, 25 Cal.4th at p. 89.) No evidence supported the premise defendant merely disregarded a risk his act would cause the structure to burn; he deliberately and intentionally threw an ignited can of kerosene at the structure. The trial court did not err or violate defendant's Sixth Amendment right to a jury determination on all issues by not instructing the jury on the lesser included offense of unlawfully starting a fire. As such, we need not address defendant's arguments addressed to prejudice.

11

## II

### *Senate Bill No. 567*

While this appeal was pending, the Governor signed Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731), effective January 1, 2022, which made changes affecting trial court sentencing discretion. Defendant asserts, and the Attorney General agrees, that Senate Bill No. 567 applies to defendant's case and that the matter must be remanded for resentencing. We also agree the matter must be remanded for resentencing.

Among other things, Senate Bill No. 567 generally limits the trial court's ability to impose the upper term sentence unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2), added by Stats. 2021, ch. 731, § 1.3.) An exception to this general rule is evidence of the defendant's prior convictions established by certified records of conviction, which need not be submitted to a jury. (§ 1170, subd. (b)(3), added by Stats. 2021, ch. 731, § 1.3.)

Generally, a penal statute does not apply retroactively unless the legislation expressly states its retroactive effect. (§ 3.) There is an exception to this general rule for statutes reducing criminal punishment which, absent a legislative statement to the contrary, apply retroactively to all cases that were not final when the legislation took effect. (See *In re Estrada* (1965) 63 Cal.2d 740, 744.) Under *Estrada*, "when the Legislature enacts a law ameliorating punishment without including an express savings clause or a similar indicator of its intent to apply the law prospectively only, we infer an intent 'that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply.' [Citation.] In this category we included cases in which the criminal act was committed before the statute's passage, so long as the judgment is not yet final. [Citation.] Thus, under *Estrada*, ' "[A]n amendatory statute lessening punishment is presumed to apply in all cases not yet reduced to final judgment as of the amendatory statute's effective date" [citation], unless

the enacting body "clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." ' " (*People v. Lara* (2019) 6 Cal.5th 1128, 1134, quoting *Estrada*, at p. 745 & *People v. DeHoyos* (2018) 4 Cal.5th 594, 600.) Nothing in Senate Bill No. 567 suggests legislative intent that the amendments apply prospectively only, and the parties agree, as do we, that defendant is entitled to the benefits of these legislative enactments.

The trial court sentenced defendant to the upper term of eight years on count three. As defendant asserts, and the Attorney General agrees, it appears that no factor in aggravation supporting the upper term sentence was stipulated to by defendant or found true beyond a reasonable doubt by the jury. (See § 1170, subd. (b)(2), added by Stats. 2021, ch. 731, § 1.3.) We agree with the parties that remand is appropriate so the trial court may resentence defendant in light of changes effected by Senate Bill No. 567.

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court for resentencing. The trial court shall resentence defendant consistent with the changes effected by Senate Bill No. 567.

/s/
Robie. J.

We concur:

/s/
Hull, Acting P. J.

/s/
Krause, J.

13