Filed 3/28/22  P. v. Nguyen CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>THIEN DUC NGUYEN,<br><br>  Defendant and Appellant. | D078477<br><br><br>(Super. Ct. No. SCD286028) |

APPEAL from a judgment of the Superior Court of San Diego County, Michael S. Groch, Judge.  Reversed.

Aurora E. Bewicke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Thien Duc Nguyen guilty of committing arson of an inhabited structure or inhabited property (Pen. Code, § 451, subd. (b)).[1]  The trial court sentenced Nguyen to a three-year prison term.

Nguyen makes a series of arguments challenging the jury instructions and the trial court's evidentiary rulings.  He also contends that the prosecutor committed prosecutorial error, and that the trial court erred in declining to order mental health diversion (§ 1001.36).  We conclude that the trial court prejudicially erred by failing to properly instruct the jury on the concept of malice in law in response to questions asked by the jury during deliberations.  We accordingly reverse the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

On the afternoon of April 24, 2020, the fire department responded to a fire inside the home where Nguyen was living.  The fire started in the home's bathroom and burned most of a bathroom vanity.  The fire also caused damage to adjacent rooms and to the ceiling of an outside patio overhang connected to the house.  When authorities responded to the fire, Nguyen was found sitting under a tree a few blocks away with three lighters in his pockets.  Nguyen was taken to the police station for questioning and voluntarily gave a statement to a police detective, during which he stated that he brought fire from an outside fire into his bathroom in order to burn "evil" and "spirits," but that the fire got out of control because he failed to keep an eye on it or put it out with water.

Nguyen was charged with one count of arson of an inhabited structure or inhabited property (§ 451, subd. (b)).

---

[1]     Unless otherwise indicated, all further statutory references are to the Penal Code.

2

At trial, the jury heard testimony that the home where Nguyen lived had been sold by Nguyen's sister in January 2020, and that the man who bought the property was in the process of trying to get Nguyen to move out of the house. The gas and electricity in the house were turned off. As the new owner testified, in February 2020, he posted a notice on the house informing Nguyen that he was required to move out in 30 days, and at some point he spoke personally with Nguyen telling him he needed to leave. According to the new owner, a court case to obtain an order evicting Nguyen from the home was still pending, as its resolution had been delayed during the pandemic.

The jury also heard testimony from a building inspector with the City of San Diego's code enforcement division who visited Nguyen's home on at least two occasions. On April 1, 2020, the building inspector told Nguyen he had to leave the house due to building code violations and substandard conditions. Nguyen responded that he was not leaving and that he owned the house. On April 17, 2020, the building inspector again visited and spoke with Nguyen. On that date, Nguyen was burning brush and branches in the backyard. The inspector told Nguyen to extinguish the fire, and Nguyen did so by using a garden hose. The building inspector testified that on that date, Nguyen calmly said "he was not leaving the place until he burns it down."

During trial, the prosecutor played Nguyen's interview with the police detective.[2] Nguyen told the police that he had lived at the house for 11 years. His father and sister had moved out several months earlier. Nguyen was aware that his sister was planning to sell the house, but he stated that

_____

[2]    Because Nguyen's first language is not English and because of the mumbling nature of his speech, Nguyen's statements during the interview are sometimes unclear and unintelligible.

3

his sister needed his permission because the house was his, and he complained that he had not gotten any money from a sale of the house. Nguyen acknowledged that he had received notice that he had to vacate the house, but his response was "that's my house."

Nguyen said that he brought fire into the bathroom because "I tried to burn something," "I want to burn something," but then forgot to put the fire out with water. Nguyen stated, "I walk away, then the fire start up." Nguyen explained that when he saw the fire burning, he went to find a friend with a phone to call the fire department. Nguyen's friend was not home, so he sat down away from the scene so he didn't have to deal with the firefighters and police officers who had responded.

When the detective inquired about what Nguyen wanted to burn inside the house, Nguyen explained he wanted to burn "something evil," "evil stuff," "spirits." "I just light some fire, burn some evil." Nguyen said that he was burning a fire outside his house to boil water due to the lack of utilities at the house, and he brought some of that fire inside the house. "I bring the fire from outside, inside." According to Nguyen, he had done the same thing in the bathroom three or four times before.

When the detective asked Nguyen whether he wanted to burn down his house, the following exchange occurred:

"[Q:] And you wanted to burn something. Did you want to burn the house down?

"[A:] Yeah, sometimes.

"[Q:] Why?

"[A:] Because I just have too much.

"[Q:] Because of why?

"[A:] Too much bullshit in the house.

"[Q:] Okay. You want to tell me about what's been going on with the house?

"[A:] That's my house. (Unintelligible) anything.

"[Q:] You own the house.

"[A:] Yeah.

"[Q:] Why would you burn a house down that you own, though, sir?

"[A:] That's why I'm crazy. Why I'm burn the house? (Unintelligible) I live (unintelligible) house.

"[Q:] That's what you told me.

"[A:] Um-hm.

"[Q:] Okay.

"[A:] You think you going to burn your house?"

In his trial testimony, the detective stated that he understood Nguyen to be expressing during this exchange that "he was not crazy," and "[i]f he burned his house, he wouldn't have a place to live."

A fire engineer for the City of San Diego who investigated the fire at Nguyen's residence testified about the result of his investigation. He also described the photographs that he took of the scene, which were displayed for the jury. As the fire engineer explained, he determined that the fire started at the right-side base of the bathroom vanity when an open flame came into contact with it. He also described finding burned pieces of vegetation such as branches and twigs that had been on top of the vanity when it burned, and there was a half-burned palm frond in the bathroom. As shown by the

5

photographs of the scene, and as described by the fire engineer, a collection of still-unburned sticks and branches were located on the left side of the bathroom vanity between it and the toilet. The vanity burned almost all of the way to the ground.

The fire engineer testified that he classified the fire as "incendiary," which he defined as "a fire *intentionally* ignited in a place and at a time where there should not be a fire." (Italics added.) He also explained that "the cause of the fire was an open flame device that was brought in contact with the vegetation that was in the bathroom."[3] Although the fire engineer did not determine the source of the open flame, he agreed that a burning branch was one type of open flame. He also agreed that the fire scene was consistent with burning vegetation being brought into the house from outside, left on top of the vanity, and then falling over between the vanity and the wall.

After engaging in deliberations, during which the trial court responded to multiple questions about the malice element of arson, the jury found Nguyen guilty of arson of an inhabited structure or property (§ 451, subd. (b)). The trial court sentenced Nguyen to a lower-term prison sentence of three years.[4]

_____

[3] The fire engineer also stated, "I determined the cause was the heat source the open flame was *intentionally* brought into contact with." (Italics added.)

[4] On April 19, 2021, Nguyen filed a motion to augment the appellate record, which we granted in part and denied in part. As relevant here, we denied the motion with respect to San Diego City Council Resolution No. 21177, ordering that we would construe the motion as a request for judicial notice to be considered concurrently with the appeal. We hereby deny the request for judicial notice, as it is not relevant to the grounds upon which we resolve this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

## II.

## DISCUSSION

A. *Nguyen's Challenge to the Instructions on the Element of Malice*

We begin with an issue that is dispositive to this appeal: Nguyen's challenge to the jury instructions on the malice requirement for arson.

As we will explain, although the jury was instructed with the standard instruction on the elements of arson of an inhabited structure, the jury was additionally instructed in response to a series of questions that it asked during deliberations. Those additional instructions were erroneous because they failed to adequately define the technical legal terms used in the instructions, even though a clear definition of malice in law, which would have been highly relevant to the jury's deliberations, is contained in our Supreme Court's case law and should have been provided to the jury.

1. *Applicable Legal Standards for Arson*

We commence our discussion with the applicable legal standards for the offense with which Nguyen was charged.

The offense of arson of an inhabited structure or inhabited property is set forth in section 451, subdivision (b), as follows: "A person is guilty of arson when he or she *willfully and maliciously* sets fire to or burns or causes to be burned or who aids, counsels, or procures the burning of, any structure, forest land, or property. . . . [¶] (b) Arson that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for three, five, or eight years." (§ 451, subd. (b), italics added.)

The crime of unlawful burning of an inhabited structure or inhabited property is a lesser included offense, and the jury was also instructed on that offense. The relevant statute states: "A person is guilty of unlawfully causing a fire when he *recklessly* sets fire to or burns or causes to be burned,

7

any structure, forest land or property. . . . [¶] (b) Unlawfully causing a fire that causes an inhabited structure or inhabited property to burn is a felony punishable by imprisonment in the state prison for two, three or four years, or by imprisonment in the county jail for not more than one year, or by a fine, or by both such imprisonment and fine." (§ 452, subd. (b), italics added.)

The fundamental difference between the lesser and greater offenses is that the lesser offense is committed "recklessly," while the greater offense is committed "willfully and maliciously." (*In re Stonewall F.* (1989) 208 Cal.App.3d 1054, 1060 & fn. 4 [discussing similarities and differences in the two statutes]; see also CALCRIM No. 1532 ["[Arson and unlawfully causing a fire require different mental states. For arson, a person must act willfully and maliciously. For unlawfully causing a fire, a person must act recklessly.]"].)

The terms "willfully," "maliciously," and "recklessly" as used in these provisions are defined by statute. "The word 'willfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. (1).) " 'Maliciously' imports a wish to vex, defraud, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law." (§ 450, subd. (e).) " 'Recklessly' means a person is aware of and consciously disregards a substantial and unjustifiable risk that his or her act will set fire to, burn, or cause to burn a structure, forest land, or property. The risk shall be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. . . ." (§ 450, subd. (f).)

Our Supreme Court has further defined the terms "willfully" and "maliciously" as they are used in the crime of arson.

With respect to the term "willfully," "the arson statute does not require the intent to cause the resulting harm, but 'rather requires only [a general] intent to do the act that causes the harm.'" (*In re V.V.* (2011) 51 Cal.4th 1020, 1027 (*V.V.*).) Thus, for example, in *V.V.*, when minors intentionally threw a lit firecracker onto dry brush, which led to a fire, the minors acted willfully, even though they may not have intended to start a fire. (*Id.* at p. 1028.) "[T]he actus reus element of section 451 was met because [the minors] willfully and intentionally committed the act that 'cause[d] to be burned . . . forest land.' (§ 451.)" (*V.V.*, at p. 1028.)

The main issue in *V.V.* was whether the minors acted maliciously, rather than recklessly, in causing the fire. (*V.V.*, *supra*, 51 Cal.4th at pp. 1030-1031.) Our Supreme Court provided an extensive discussion of that issue, drawing heavily on its prior opinion in *People v. Atkins* (2001) 25 Cal.4th 76 (*Atkins*).

> "Malice in fact—defined as 'a wish to vex, annoy, or injure' (§ 7, item 4)—consists of actual ill will or intent to injure. [Citations.] However, ' "[t]here is still another malice, the presumption of the existence of which is raised by the law in certain cases upon certain proofs." ' [Citation.] This type of malice—*malice in law*— is defined in section 7, item 4 as '*an intent to do a wrongful act*, established either by proof or presumption of law.' [Citations.] Malice in law may be 'presumed' or 'implied' from the intentional doing of the act without justification or excuse or mitigating circumstances. [Citations.]
>
> "In determining whether the second type of malice ('intent to do a wrongful act') is established for arson, *malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right*. [Citations.] ' "An intentional act creating an obvious fire

9

hazard . . . done without justification . . . would certainly be malicious. . . .” ’ [Citation.]

“As we stated in *Atkins,* arson’s ‘willful and malice requirement ensures that the setting of the fire must be a deliberate and intentional act, as distinguished from an accidental or unintentional ignition or act of setting a fire; “ ‘in short, a fire of incendiary origin.’ ” [Citations.] “Because the offensive or dangerous character of the defendant’s conduct, by virtue of its nature, contemplates such injury, a general criminal intent to commit the act suffices to establish the requisite mental state.” [Citation.] Thus, there must be a general intent to willfully commit the act of setting on fire *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property*.’ [Citations.]” (*V.V.*, *supra,* 51 Cal.4th at pp. 1028-1029, italics omitted and added.)

Applying this definition of malice to the case before it, our Supreme Court stated that “[a] defendant may be guilty of arson if he or she acts with awareness of facts that would lead a reasonable person to realize that the *direct, natural, and highly probable consequence* of igniting and throwing a firecracker into dry brush would be the burning of the hillside.” (*V.V.*, *supra*, 51 Cal.4th at p. 1030, italics added.) The court explained that the minors “were aware of facts that would lead a reasonable person to realize that the direct, natural, and highly probable consequence of throwing a lit ‘cherry bomb’ from their location would be its landing in the dry brush short of the concrete area and causing a fire,” and thus “the juvenile court reasonably inferred that [the minors] acted with malice.” (*Id.* at p. 1031.)

In *V.V.*, two justices dissented, including Justice Werdegar, who took the position that the majority had improperly presumed malice simply from the commission of the intentional act that causes a fire to start. (*V.V.*, *supra,*

10

51 Cal.4th at pp. 1033-1039 (dis. opns. of Kennard, J., and Werdegar, J.).)[5] In responding to Justice Werdegar's dissent, the majority again explained the definition of malice. " '[T]here must be a general intent to willfully commit the act of setting on fire *under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.*' [Citation.] The unitalicized language describes arson's willful requirement . . . , i.e., that the act of setting fire to, of burning, or that causes to be burned (§ 451) is intentional. The italicized language describes arson's malice requirement, i.e., that the willful and intentional act is committed under circumstances that create an obvious fire hazard. Thus, a willful act that causes a fire without further evidence of the underlying circumstances would be insufficient to establish malice." (*V.V.*, at p. 1031, fn. 6.)

2. *Relevant Jury Instructions*

The jury was instructed with CALCRIM No. 1502 regarding the crime of arson of an inhabited structure or inhabited property.

> "The defendant is charged in Count 1 with arson that burned an inhabited structure or inhabited property, in violation of Penal Code section 451(b).

> "To prove that the defendant is guilty of this crime, the People must prove that:

---

[5] We note that in *Mason v. Superior Court* (2015) 242 Cal.App.4th 773, Acting Presiding Justice Blease authored an extensive dissent to his own majority opinion, in which he criticized *V.V.*'s and *Atkin*'s description of the mental state for arson, making similar points as Justice Werdegar's dissent in *V.V.* (*Mason,* at pp. 791-802 (dis. opn. of Blease, Acting P. J.).) Nguyen argues that to the extent we are required to reach the issue, we should adopt the view set forth in *Mason*. We do not address the issue, as it is unnecessary for us to do so to resolve this appeal. We are in any event bound by the law of arson as interpreted by our Supreme Court in *V.V.* and *Atkins*. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

11

"1.  The defendant set fire to or burned or counseled, or helped, or caused the burning of a structure or property;

"2.  He acted willfully and maliciously;

"AND

"3.  The fire burned an inhabited structure or inhabited property.

"To set fire to or burn means to damage or destroy with fire either all or part of something, no matter how small the part.

"Someone commits an act willfully when he or she does it willingly or on purpose.

*"Someone acts maliciously when he or she intentionally does a wrongful act or when he or she acts with the unlawful intent to defraud, annoy, or injure someone else.*

"A structure is any building.

"A structure or property is inhabited if someone uses it as a dwelling, whether or not someone is inside at the time of the fire. An inhabited structure or inhabited property does not include the land on which it is located.

"Property means personal property or land other than forest land."  (Italics added.)

Additional instruction on the elements of the offense were given in response to two different jury notes.

First, during deliberations, the jury asked for clarification regarding the requirement that the defendant act maliciously.  "We need/looking for clarification on 'Intentionally does a <u>wrongful act</u>.'  We need additional legal definition of this part of 'Malicious.'  What is a wrongful act?  What does this mean?"  To paraphrase using the terminology employed in *V.V.*, *supra*, 51 Cal.4th 1020, the jury was asking for a legal definition of "malice in law."

12

After a lengthy discussion with counsel, the trial court gave the following response: "For a violation of PC 451(b), a wrongful act is setting fire to, or burning, or counseling, or helping, or causing the burning of a structure or property *without any legal justification or excuse or claim of right*." (Italics added.)

This instruction was comprised of the words defining the first element of the offense of arson as set forth in CALCRIM No. 1502 (i.e., "[t]he defendant set fire to or burned or counseled, or helped, or caused the burning of a structure or property"), followed by *one* of the formulations for malice in law set forth in *V.V.* Specifically, the instruction drew from *V.V.*'s statement that malice in law "will be presumed or implied from the deliberate and intentional ignition or act of setting a fire *without a legal justification, excuse, or claim of right*." (*V.V.*, *supra*, 51 Cal.4th at p. 1028, italics added.) The trial court did *not* instruct with the other formulation for malice in law that *V.V.* repeated multiple times and relied upon in its analysis, namely, that the fire must be set " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*Id.* at pp. 1029, 1031, fn. 6, italics omitted.)

After further deliberation, the jury indicated that it was unable to reach a verdict, with 11 votes for guilty, and one vote for not guilty. Certain members of the jury indicated upon inquiry by the trial court that additional information might be helpful in reaching a verdict, and the trial court directed the jury to compose a note listing the information that would be helpful. The jury then sent the following note:

> "1)   Can you provide the legal definition of (or what can/should be considered when determining) 'Intentionally.'

> "2)   The difference of opinion is whether he acted maliciously. Could we obtain more information <u>OR</u> hear arguments on this.

13

"3)     Can we ask for the attorney's [*sic*] to argue for/against the defendant's credibility."

The first and second question on the list *both* pertained to the issue of whether Nguyen acted maliciously. The first question was directed to that issue because it asked about the term "intentionally," which appears in CALCRIM No. 1502 *only* in the statement that "[s]omeone acts maliciously when he or she intentionally does a wrongful act." The second question expressly asked about the issue of malice.

After further conferring with counsel, the trial court responded as follows:

"1.     Arson of an inhabited structure, as charged in Count 1, requires general intent; it does not require a specific intent to burn a structure or property, but rather requires only an intent to do the act that causes the harm. It is not required that he or she intend to break the law.

"2.     Arson and unlawfully causing a fire require different mental states. For arson, a person must act willfully and maliciously. For unlawfully causing a fire, a person must act recklessly. *Someone acts maliciously when he or she intentionally does a wrongful act (such as setting fire to or burning or causing the burning of a structure or property without legal justification, excuse, or claim of right) or when he or she acts with the unlawful intent to defraud, annoy or injure someone else*.

"3.     Regarding witness credibility, the credibility of every person who makes a statement that is received as evidence should be considered in evaluating what weight to attach. Please see instruction 226 for examples of factors the jury may wish to consider. You alone must judge the credibility of every witness." (Italics added.)

In giving this second supplemental instruction to the jury, the trial court did not provide any additional instruction that it had not already given to the jury as to how to decide whether Nguyen acted maliciously. The

14

instruction merely repeated from the earlier supplemental instruction that a malicious act includes a wrongful act "without . . . legal justification or excuse or claim of right," and it restated the already-given language from CALCRIM No. 1502 that a person also acts maliciously (i.e., with malice in fact) "when he or she acts with the unlawful intent to defraud, annoy, or injure someone else." As before, the trial court did not provide the jury with the definition of malice in law that is repeated multiple times in *V.V.* and that our Supreme Court relied upon for its analysis in that case. (*V.V.*, *supra*, 51 Cal.4th at p. 1031, fn. 6 [the fire must be set " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property'" (italics omitted)].)[6]

After receiving this second round of supplemental instructions, the jury reached a verdict.

3. *The Supplemental Instructions Failed to Adequately Define the Terms "Legal Justification, Excuse, or Claim of Right"*

Nguyen contends that the supplemental instructions the trial court gave the jury on the element of malice were in error because they did not adequately define the legal terminology employed in the instructions.[7]

---

[6] Throughout the discussion regarding how to respond to the jury's two notes, neither defense counsel, the prosecutor, nor the trial court raised the possibility of clarifying the concept of malice in law by instructing the jury that acting maliciously as required for the crime of arson includes setting a fire " '*under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.*'" (*V.V.*, *supra*, 51 Cal.4th at p. 1031, fn. 6.)

[7] Although the issues were raised in Nguyen's opening appellate brief, neither of the parties' original appellate briefing adequately discussed the issue of whether the trial court's supplemental instructions either: (1) erroneously failed to define technical legal terminology; or (2) improperly

As Nguyen argues, it was improper to give the supplemental instructions on malice "without also providing the jury with additional instructions on how to analyze whether Mr. Nguyen may have had a 'legal justification, excuse, or claim of right' to 'set[ ] fire to . . . a structure or property.'" (Italics omitted.) According to Nguyen, "[t]he trial court cannot be said to have fulfilled its duty to instruct the jury 'on general principles of law that are closely and openly connected to the facts and that are necessary for the jury's understanding of the case' . . . by defining malice according to the absence of factors of which the jury had received no instructions on how to analyze." He argues that "the court should have delivered an instruction explaining what a 'claim of right' or legal justification is, in the context of burning property or causing property to be burned."[8] The People respond that no further definition was warranted because "appellant did not proceed on a 'claim of right' theory (which is not a valid defense to arson of an inhabited dwelling) and because the term 'legal justification' has a clear

shifted the burden of proof to Nguyen to prove legal justification, excuse or claim of right. We accordingly requested that the parties submit supplemental briefing on those issues.

[8] In his opening appellate brief, Nguyen suggests that to explain the concept of "legal justification" and "claim of right," the trial court should have "explained that, in assessing malice, the jury was to consider the fact that individuals are not prohibited from burning their own property or property they believe to be theirs, unless they are acting with the specific intent to defraud." In the supplemental briefing we requested on the instructional issue, Nguyen states that, in addition, the trial court should have instructed that "the prosecution was required to prove Mr. Nguyen caused/set fire to property ' " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure . . . .' " ' " (Bolding omitted.)

16

meaning." The People do not identify the purportedly "clear meaning" of
" 'legal justification.' "

We begin our analysis with the legal principles governing the trial
court's duty to instruct the jury. "Even without a request, a trial court is
obliged to instruct on ' "general principles of law that are commonly or closely
and openly connected to the facts before the court and that are necessary for
the jury's understanding of the case" ' [citation], or put more concisely, on
' "general legal principles raised by the evidence and necessary for the jury's
understanding of the case." ' " (*People v. Delgado* (2013) 56 Cal.4th 480, 488.)
"The trial court has a duty to help the jury understand the legal principles
the jury is asked to apply. [Citation.] In particular, under section 1138 the
court must attempt 'to clear up any instructional confusion expressed by the
jury.' " (*People v. Giardino* (2000) 82 Cal.App.4th 454, 465.) Although "[a]
court has no sua sponte duty to define terms that are commonly understood
by those familiar with the English language, . . . it does have a duty to define
terms that have a technical meaning peculiar to the law. [Citations.]
'[T]erms are held to require clarification by the trial court when their
statutory definition differs from the meaning that might be ascribed to the
same terms in common parlance.' " (*People v. Bland* (2002) 28 Cal.4th 313,
334 (*Bland*).) "A word or phrase having a technical, legal meaning requiring
clarification by the court is one that has a definition that *differs* from its
nonlegal meaning." (*People v. Estrada* (1995) 11 Cal.4th 568, 574.) "A claim
of instructional error is reviewed de novo." (*People v. Mitchell* (2019) 7
Cal.5th 561, 579.)

Here, the trial court responded to the jury's questions about malice in
law by stating that "a wrongful act is setting fire to, or burning, or
counseling, or helping, or causing the burning of a structure or property

17

*without any legal justification or excuse or claim of right.*"  (Italics added).
When the jury again asked about malice in law, the trial court repeated that
instruction by stating that "[s]omeone acts maliciously when he or she
intentionally does a wrongful act (such as setting fire to or burning or causing
the burning of a structure or property *without legal justification, excuse, or
claim of right*) . . . ."  (Italics added.)

The jury was not instructed on how to determine whether Nguyen
caused a fire "without legal justification, excuse, or claim of right."  As we will
explain, in the context of a criminal prosecution, none of those terms has a
" 'meaning that might be ascribed to the same terms in common parlance.' "
(*Bland*, *supra*, 28 Cal.4th at p. 334.)

### a. *Justification and Excuse*

The terms "justification" and "excuse" describe a broad range of legal
concepts that differ, in part, based on the underlying criminal act at issue.
For example, case law has explained that, in the context of homicide, "excuse
is best exemplified by accident or misfortune (. . . § 195), and justification is
exemplified by the concept of self-defense (. . . §§ 197-198), although these are
not the exclusive bases for excuse or justification." (*People v. Frye* (1992) 7
Cal.App.4th 1148, 1155.)  Self-defense is also a justification for assault and
other assaultive crimes. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1064;
*People v. Adrian* (1982) 135 Cal.App.3d 335, 340.)  Moreover, crimes may be
excused or justified based on a defense of necessity or duress (*People v.
Saavedra* (2007) 156 Cal.App.4th 561, 567), although case law does not
consistently categorize those doctrines (*People v. Verlinde* (2002) 100
Cal.App.4th 1146, 1164 [describing necessity as an excuse]; *People v. Heath*
(1989) 207 Cal.App.3d 892, 900-901 [describing necessity as a justification]).

Indeed, there is controversy in the legal literature about how to categorize any particular defense as either a justification or an excuse. (Gabriel J. Chin, *Unjustified: The Practical Irrelevance of the Justification/Excuse Distinction* (2009) 43 U. Mich. J.L. Reform 79, 82 ["Scholars . . . disagree about categorization as justification or excuse of many individual defenses, including duress, provocation, and others."].) As one professor has observed, "Any legal system must pause before making its most important decisions rest on precise application of concepts that lack accepted definitions and appear difficult, perhaps impossible, to administer." (*Ibid.*) One judicial opinion, relying on its own review of the existing scholarly commentary, suggested that "[j]ustification declares the allegedly criminal *act* legal; excuse admits the act's criminality but declares the allegedly criminal *actor* not to be worthy of blame. [Citations.] Therefore, justification requires an objective evaluation of the allegedly criminal *act*; excuse requires only a subjective evaluation of the allegedly criminal *state of mind*." (*People v. Aris* (1989) 215 Cal.App.3d 1178, 1196, disapproved on other grounds in *People v. Humphrey* (1996) 13 Cal.4th 1073, 1089.)

Due to the broad range of justifications and excuses, juries are routinely instructed on the precise requirements for finding a particular justification or excuse to be applicable. (See, e.g., CALCRIM No. 3402 ["Duress or Threats"]; CALCRIM No. 3403 ["Necessity"]; CALCRIM No. 3404 ["Accident"]; CALCRIM No. 3406 ["Mistake of Fact"]; CALCRIM No. 3408 ["Entrapment"]; CALCRIM No. 3470 ["Right to Self-Defense or Defense of Another (Non-Homicide)"].) Moreover, consistent with the breadth of existing justifications and excuses, instructions on the burden of proof for those justifications or excuses differ depending on the particular concept at issue. (See, e.g., CALCRIM No. 3403 [for necessity, "[t]he defendant has the burden

19

of proving this defense by a preponderance of the evidence"]; CALCRIM No. 3408 ["If the defendant has proved that it is more likely than not that (he/she) . . . was entrapped, you must find (him/her) not guilty . . . ."]; CALCRIM No. 3470 [for self-defense, "[t]he People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful (self-defense/ [or] defense of another)"]; CALCRIM No. 3402 ["The People must prove beyond a reasonable doubt that the defendant did not act under duress."]; CALCRIM No. 3405 [for offenses involving a parent or guardian's use of force against a child, "[t]he People must prove beyond a reasonable doubt that the (force/ [or] method of punishment) used was not justifiable."].)

Based on this background, we do not agree with the People that "the term 'legal justification' has a clear meaning" that would be understood by a jury, and we reach the same conclusion for the closely-related term "excuse."

b. *Claim of Right*

The term "claim of right" also does not have a common meaning that would be understood by a layperson. That phrase refers to a common law doctrine developed in the context of property crimes. Specifically, "[t]he claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery." (*People v. Tufunga* (1999) 21 Cal.4th 935, 938; see also CALCRIM No. 1863 ["Defense to Theft or Robbery:  Claim of Right"].)  That meaning would not be known to someone without a background in the law.  Further, we have located no case law or commentary applying a claim-of-right defense in the context of arson, and the parties have identified no such authority. Thus, a reasonable juror cannot have been expected to understand how to

20

determine whether Nguyen set fire to his home "without a . . . claim of right."[9]

---

[9]     We have also looked to the source for the trial court's supplemental instructions in an attempt to define the terms "legal justification," "excuse," and "claim of right" to determine whether those terms have a commonly understood meaning. The trial court's supplemental instructions were based on *V.V.*'s statement that "malice will be presumed or implied from the deliberate and intentional ignition or act of setting a fire without a legal justification, excuse, or claim of right." (*V.V.*, *supra*, 51 Cal.4th at p. 1028.) *V.V.*'s language was derived from our Supreme Court's *Atkins* opinion, which quoted from the American Jurisprudence Second treatise: "Arson's malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' (5 Am.Jur.2d (1995) Arson and Related Offenses, § 7, p. 786.)" (*Atkins*, *supra*, 25 Cal.4th at p. 88.) However, reference to that treatise does not provide clarification of the meaning of those terms for the purpose of defining malice in the context of arson. In the 1995 version of the American Jurisprudence Second treatise cited in *Atkins*, the two cases cited to support the statement quoted are *State v. Eubanks* (N.C.Ct.App. 1986) 349 S.E.2d 884, and *In re Appeal in Pima County Juvenile Action No. J-37390-1* (Ariz.Ct.App. 1977) 570 P.2d 206. (5 Am.Jur.2d (1995) Arson and Related Offenses, § 7, p. 786, fn. 52.) Without citation, or further explanation of the terminology used, those cases both state that for a burning to be willful and malicious in the law of arson, it "must simply be done voluntarily and without excuse or justification and without any bona fide claim of right." (*State v. Eubanks*, at p. 885; *In re Appeal in Pima County Juvenile Action No. J-37390-1*, at p. 209.) It has been observed that "to 'instruct juries by the use of quotations from appellate opinions taken out of context is to court disaster.' " (*People v. Southard* (2021) 62 Cal.App.5th 424, 436.) That principle is doubly true here because the trial court relied on language from *V.V.*, which was not designed to be used as a jury instruction, and which itself was derived from a treatise that provided little support or explanation for its statement.

      c.     *Our Supreme Court Has Provided Guidance as to the Circumstances Under Which a Person May Be Found to Have Set a Fire Without Legal Justification, Excuse, or Claim of Right*

Because "legal justification," "excuse," and "claim of right" as used by the trial court had "a technical meaning peculiar to the law" (*Bland, supra,* 28 Cal.4th at p. 334), without additional instruction on the meaning of those terms, Nguyen's jurors could not have understood the circumstances in which a person wrongfully performs an intentional act that causes an unintended destructive fire.

The jurors should not have been left to struggle with the meaning of the undefined legal terminology, particularly when they repeatedly asked the trial court for help. Case law provides clear guidelines for how a finder of fact should make a determination as to whether someone lacks legal justification for setting a fire, and those guidelines are directly applicable here. Specifically, in *V.V.*, our Supreme Court explained that a person who sets a fire may be presumed to act maliciously if that person willfully commits the act of setting on fire " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*V.V., supra,* 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted.) Put simply, someone who sets a fire under those circumstances acts *without legal justification* and thus does a "wrongful act" constituting malice in law.[10]

_____

[10]    In describing the legal standard for determining whether a person lacks legal justification for willfully setting a fire, we do not intend to foreclose other possible legal justifications or excuses that are not unique to arson. For example, a circumstance may arise in which a person commits arson under necessity or duress, and that person should be able to assert those defenses even if " 'the direct, natural, and highly probable

22

As we have explained, a trial court has a duty to instruct on " ' "general principles of law . . . that are necessary for the jury's understanding of the case" ' " (*Delgado, supra,* 56 Cal.4th at p. 488), and "to define terms that have a technical meaning peculiar to the law" (*Bland, supra,* 28 Cal.4th at p. 334). Applying those principles here, the trial court erred in instructing the jury that a person acts maliciously by intentionally "setting fire to or burning or causing the burning of a structure or property without legal justification, excuse, or claim of right," without *further* instructing the jury on how to determine whether a person intentionally sets a fire without legal justification. To fulfill its instructional duty, the trial court should have instructed the jury that a person who sets a fire may be presumed to act maliciously, and therefore without legal justification, if that person willfully commits the act of setting on fire " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*V.V., supra,* 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted.)[11]

---

consequences' " of the person's willful conduct " 'would be the burning of the relevant structure or property.' " (*V.V., supra,* 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted.)

[11]    Nguyen also argues that aside from failing to define the relevant legal terminology, the trial court's supplemental instructions on the issue of malice were flawed because the jury could have understood them to improperly shift the burden of proof to the defense to establish a legal justification, excuse, or claim of right. Specifically, Nguyen argues that "by defining maliciousness as the carrying out of any intentional act *without* legal justification, the jurors may well have concluded that any intentional act equaled an act carried out with malice, as a matter of law, unless the *defendant* affirmatively proved he had a legal right to burn, for example, his own (real or personal) property." The absence of a legal justification, excuse or claim of right is part of the element of malice in instances where the People proceed under a theory of

23

B.    *The Error Was Prejudicial*

Having concluded that the trial court erred in its formulation of the supplemental jury instructions, we examine whether the error was prejudicial.

" ' "[M]isdirection of the jury, including incorrect, ambiguous, conflicting, or wrongly omitted instructions that do not amount to federal constitutional error are reviewed under the harmless error standard articulated" in [*People v. Watson* (1956) 46 Cal.2d 818, 836].' [Citations.] '[U]nder *Watson,* a defendant must show it is reasonably probable a more favorable result would have been obtained absent the error.' " (*People v. Beltran* (2013) 56 Cal.4th 935, 955.)  " ' " '[A] "probability" in this context does not mean more likely than not, but merely a *reasonable chance,* more than an

malice in law, because a person does not act with malice in law unless a fire is intentionally set without legal justification, excuse, or claim of right. (*V.V.*, *supra*, 51 Cal.4th at p. 1028.)  Thus, it was the People's burden to prove that Nguyen acted without legal justification, excuse, or claim of right. (See *People v. Neidinger* (2006) 40 Cal.4th 67, 72-73 ["it is constitutionally permissible to place on the defendant the burden of proving affirmative defenses by a preponderance of the evidence" only "as long as the defendant is *not* required to negate an element of the offense" (italics added)].)  In our assessment, it is a close question whether, in light of the other jury instructions on the burden of proof, there is a reasonable likelihood that the jury might have read the supplemental instructions to assign the burden of proof to Nguyen to prove a legal justification, excuse, or claim of right. (*People v. Mills* (2012) 55 Cal.4th 663, 677 [instructions erroneously shift the burden if, when read as a whole, " 'there is a " 'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." ' "].)  However, in light of our conclusion that prejudicial error occurred due to the trial court's failure to properly define "legal justification, excuse, or claim of right" in explaining the doctrine of malice in law, we need not, and do not, resolve the question of whether the supplemental instructions may also have impermissibly shifted the burden of proof on the element of malice.

*abstract possibility.' " ' " (People v. Wilkins* (2013) 56 Cal.4th 333, 351 (*Wilkins*).)

As an initial matter, we note that the People attempted to prove that Nguyen acted maliciously by arguing that the jury could rely on *either* of two possible theories of malice: malice in law or malice in fact. Specifically, the People argued: (1) the evidence supported a finding of malice in fact because Nguyen was angry and wanted to burn down the house to annoy the person who bought the house;[12] and (2) the evidence supported a finding of malice in law because "[t]his is somebody who was trying to start a fire without a legal justified or excusable reason; therefore, it's a wrongful act."[13]

---

[12]  Specifically, the prosecutor argued, "Well, we know that the defendant was frustrated. We know that he was angry and upset about the situation with his house. He had been told by . . . the new owner, that he needed to vacate the premises. He had also been told by . . . code enforcement, that he needed to leave due to health and safety concerns, that it was no longer an inhabitable dwelling. He was angry. You can hear it when he was talking to [the detective] about the situation involving the selling of his house. He's upset. . . . So he certainly was acting with the intent to defraud, annoy, or injure if—at the very least, with the intent to annoy the new land owners, get back at the people who were trying to hurt him, who were trying to get him out of that house."

[13]  On malice in law, the prosecutor argued, "Well, no one has a legal justification for starting a fire anywhere that it doesn't belong, especially here in the state of California. That poses a risk to everyone. So there's no legal justification for starting a fire anywhere that it does not belong, such as a fire pit, a fire place, a barbecue, et cetera. There is no legal justification for starting this fire. There's no excuse for starting a fire next to the toilet in a bathroom. The defense will likely tell you that the defendant was living in squalor and he had to heat water. You can use your own common sense and logic and recognize that there were no pots and pans in there. There was nothing to indicate that this was being used for an innocuous or innocent purpose. This is somebody who was trying to start a fire without a legal

25

The jury's questions during deliberations suggested that at least one juror was not convinced that the People had proven malice in fact, and that the jury therefore wanted further instruction to be able to determine whether the People had proven malice in law. Specifically, the first jury question focused on the concept of a "wrongful act" in the definition of malice in law. "We need/looking for clarification on 'Intentionally does a <u>wrongful act</u>.' We need additional legal definition of this part of 'Malicious.' What is a wrongful act? What does this mean?" The second set of questions asked about the term "intentionally" that appears in the malice in law instruction, and also requested further instruction or argument on whether Nguyen "acted maliciously." Based on the jury's questions, despite the People's attempt to establish *malice in fact*, we have no doubt that the trial court's supplemental instructions on *malice in law* were directly relevant to the issue that was preventing the jury from reaching a verdict.[14]

When the instructional error consists of failing to define technical legal terminology, "[t]o determine whether the error was prejudicial we must decide what instruction the court should have given" to assess whether a

---

justified or excusable reason; therefore, it's a wrongful act, a wrongful act which satisfies the maliciousness requirement."

[14]     The People argue in their supplemental briefing that any instructional error on malice in law was harmless because "the evidence overwhelmingly established that [Nguyen] intentionally (and thus with malice) lit the house on fire." The People point to the evidence that they contend establishes that Nguyen wanted to burn down the house. As we understand the argument, the People take the position that the evidence of malice in fact was so strong that any error in the instructions on malice in law could not have been prejudicial. We reject the argument. As we have explained, the jury's questions established that at least one of the jurors was focused solely on malice in law, implying that malice in fact had already been rejected as a possible basis for finding that Nguyen acted with malice in setting the fire.

different outcome is reasonably probable under that instruction. (*Bland*, *supra*, 28 Cal.4th at p. 335.) Here, as we have explained, in response to the jury's questions about malice in law, the trial court should have instructed that a person commits a wrongful act when that person willfully performs the act of setting a fire " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*V.V.*, *supra*, 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted.) If the trial court had done so, the jury would have had guidance about how to determine whether Nguyen set a fire without legal justification, excuse, or claim of right for the purpose of deciding whether the People met their burden of proof for malice in law.

It is clear from the record that the jury was hung on the issue of malice in law. As we will explain, had the jury been instructed that malice in law exists when someone intentionally sets a fire " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property' " (*V.V.*, *supra*, 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted), there is " ' " 'a reasonable chance, more than an abstract possibility' " ' " (*Wilkins*, *supra*, 56 Cal.4th at p. 351) that the hold-out juror would not have concluded that the People met their burden to prove malice in law.

The evidence at trial about what happened in the bathroom of Nguyen's house was sparse. Due to a language barrier and mumbled speech, Nguyen's statement to the detective is difficult to understand. However, Nguyen appears to have admitted that he took burning vegetation into the bathroom from his backyard cooking fire to burn evil spirits. He also described walking away and failing to put out the fire with water. Nguyen further described

27

having done the same thing in the bathroom three or four times before, apparently without causing the house to burn.

The fire engineer attempted to reconstruct what happened in the bathroom by examining the scene after the fact, but the results were limited. He was able to determine that the fire started at the right-side base of the bathroom vanity when an open flame came into contact with it, and that there were burned pieces of vegetation such as branches or twigs that had been on top of the vanity when it burned. He agreed that the fire could have been caused from burning vegetation being brought into the house from outside, left on top of the vanity, and then falling over between the vanity and the wall.

Defense counsel focused on these facts in his closing argument. As defense counsel told the jury, Nguyen did not act maliciously because he "was burning evil spirits and . . . he did not mean to light the bathroom on fire." According to defense counsel, there was no question that Nguyen acted *recklessly* by bringing burning vegetation into the bathroom to burn evil spirits and then leaving it unattended, but he did not act *maliciously*. Thus, defense counsel advocated that the jury should find Nguyen guilty of the lesser included offense of unlawfully causing a fire of an inhabited structure (§ 452, subd. (b)), which requires only recklessness, and that it should find him not guilty of the greater offense of arson of an inhabited structure, which requires malice.[15]

---

[15] The jury was instructed that for the lesser included offense of unlawfully causing a fire of an inhabited structure (§ 452, subd. (b)), "[a] person acts recklessly when (1) he or she is aware that his actions present a substantial and unjustifiable risk of causing a fire, (2) he or she ignores that risk, and (3) ignoring the risk is a gross deviation from what a reasonable person would have done in the same situation."

Based on this trial record, a rational juror could conclude that the only scenario that the People proved beyond a reasonable doubt was that Nguyen brought some burning vegetation into the bathroom with the intention of smoking out evil spirits, but he failed to keep a close eye on the burning vegetation on top of the vanity. Further, Nguyen may have performed the same activity several times before without incident, although on this occasion the vegetation may have unexpectedly fallen down and caused the bathroom vanity to catch on fire. This is precisely the scenario advocated by defense counsel. If correctly instructed, it would be reasonable for a juror to conclude that such a scenario amounted to recklessness because there was "a substantial and unjustifiable risk of causing a fire," but that without further information, the People did not prove that "the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.'" (*V.V.*, *supra*, 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted.)

In sum, due to the sparse evidence of what occurred in Nguyen's bathroom, a finder of fact could conclude that the People did not meet their burden to prove that Nguyen intentionally set a fire " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property'" (*V.V.*, *supra*, 51 Cal.4th at pp. 1029, 1031, fn. 6, italics omitted), rather than under circumstances suggesting recklessness. Indeed, as our Supreme Court has observed, a finding of malice in law requires sufficient evidence of the underlying circumstances to allow a jury to conclude that the fire was set " 'under such circumstances that the direct, natural, and highly probable consequences would be the burning of the relevant structure or property.' " (*Ibid.*) As our Supreme Court has stated, "a willful act that causes a fire

*without further evidence of the underlying circumstances* would be insufficient to establish malice." (*Id.* at p. 1031, fn. 6, italics added.)

We accordingly conclude that the trial court's instructional error was prejudicial, as there is a reasonable probability that Nguyen would have obtained a more favorable result, at least in the form of a hung jury, had the trial court instructed the jury with our Supreme Court's language from *V.V.* describing malice in law. (See *People v. Soojian* (2010) 190 Cal.App.4th 491, 520-521 [a hung jury is a more favorable result than a guilty verdict].)[16]

## DISPOSITION

The judgment is reversed, and this matter is remanded for further proceedings consistent with this opinion.

IRION, J.

WE CONCUR:

McCONNELL, P. J.

HALLER, J.

---

[16]    As we are reversing the judgment based on the instructional error, we need not reach Nguyen's other arguments for reversal.